## Case No. 15,508.

UNITED STATES v. KAZINSKI et al.

[2 Spr. 7;[1] 8 Law Rep. 254.]

District Court, D. Massachusetts. June, 1855.

INDICTMENT—JOINDER OF DEFENDANTS—VIOLATION OF NEUTRALITY LAWS.

1. Two or more persons charged with committing an offence in its nature several, cannot be joined in the same indictment.

2. It is not a crime, under the neutrality law, to leave this country with intent to enlist in foreign military service.

3. It is not a crime to transport persons out of the country with their own consent, who have an intention of so enlisting.

4. To constitute a crime under the statute, such persons must be hired or retained to go abroad with the intent to be so enlisted.

This was an indictment [against Louis Kazinski and others] for violation of the second section of what is commonly known as the neutrality act of 1818 (3 Stat. 447). The section reads as follows: "If any person shall, within the territory or jurisdiction of the United States, enlist or enter himself, or hire or retain another person to enlist or enter himself, or to go beyond the limits or ju-

[1] [Reported by John Lathrop, Esq., and here reprinted by permission.]

risdiction of the United States, with intent to be enlisted or entered in the service of any foreign prince, state, colony, district or people, as a soldier, marine or seaman, on board of any vessel of war, letter of marque, or privateer, every person so offending shall be deemed guilty of a high misdemeanor, and shall be fined not exceeding $1,000, and be imprisoned not exceeding three years."

The first count of the indictment charged the defendants with having, "at said district, hired and retained one William Newman and one George Smith to enlist and enter himself, as a soldier, in the service of a foreign prince, to wit: the queen of Great Britain and Ireland." The second count charged the defendants with having, "at Tarpaulin Cove, enlisted and entered themselves, and that each of them did then and there enlist and enter himself to go beyond the limits of the United States, to wit: to Halifax, in the British province of Nova Scotia, as a soldier, in the service of a foreign prince, to wit: the queen of Great Britain and Ireland." The third count was the same, with the exception of the "foreign prince, to wit: the emperor of France." The fourth count charges the defendants with having "entered and enlisted themselves, and each of them did then and there enlist and enter himself to go beyond the limits of the United States, to wit: to Halifax, in the British province of Nova Scotia, with intent of each of said persons, there to be enlisted and entered as a soldier in the service of a foreign prince," &c. The fifth count charged the defendants with having "then and there retained another person, to wit, Joseph C. Vigne and one Jacob Fisher, to go beyond the limits of the United States, to wit, to Halifax, in the British province of Nova Scotia, with intent of the said defendants, that the said Joseph and the said Fisher should be enlisted and entered as a soldier," &c. The sixth count charged the defendants with having "retained certain other persons, to wit, Joseph C. Vigne and Edward Colavel, to go beyond the limits of the said United States, to wit, to Halifax, with intent of him, the said Joseph, and of him, the said Edward, to be there enlisted and entered as a soldier in the service of a foreign prince," &c. The seventh count charged the defendants with having "hired and retained certain other persons then and there, whose names are unknown, to go beyond the limits of the said United States, to Halifax, with intent of them, such other persons, whose names are to the jury unknown, to be enlisted and entered in the service of a foreign prince," &c.

A motion to quash was made by counsel for defendants, on the grounds: 1st. That the second, third and fourth counts charged several distinct and separate offences, which, from their nature, the defendants could be guilty of only severally; that is, each of the defendants committed a crime in enlisting

himself; and there was no possibility in the nature of things that any other one of the four defendants should be guilty of the crime of the first one's enlisting or entering himself, and so on. And these counts were bad both for misjoinder of the defendants and offences. 2d. That neither of them alleged any offence within the statute, neither of said counts charging defendants with having enlisted himself as a soldier; but the second and third charging them with enlisting to go beyond the limits of the United States as a soldier; and the fourth, that they had entered and enlisted to go beyond the limits of the United States, with intent there to be entered and enlisted. It was also objected to all the counts in said indictment, that they charged no crime, as the purpose of this section of the statute was to prevent only marine expeditions and enlistment for marine service; that the word "soldier" was limited by the following words: "On board a vessel of war, letter of marque or privateer." The three following sections of the same act are evidently limited to naval enlistments, and the sixth was the first section that related to land expeditions, and under that only could an offence of this kind at all be the subject of an indictment.

The district attorney said he was required by the "fee bill" to join all offences and all offenders in the same indictment; that he had no discretion; where he could join, he must join both offences and offenders. It was contended by counsel for defendants that this was merely directory, and the rights of these several defendants could not be disposed of so summarily; that the fee bill, in the first place, did not require the several offences to be in one count in the same indictment; that all the direction to join could mean was offences and offenders that might properly be joined by the rules of pleading.

B. F. Hallett, U. S. Dist. Atty.

John A. Andrew and William L. Burt, for defendants.

SPRAGUE, District Judge, held that the word "soldier," used in this section, was sufficient to extend it to cases of this nature. Ordinarily the words of limitation following would qualify all the words preceding; but here "soldier" must be taken in its ordinary sense, as one enlisted to serve on land in a land army. That the fee bill was obligatory on the court, and all offences and offenders that might, under the rules of pleading, have been joined formerly, must be joined now. The only question was, whether the offences set forth in the second, third and fourth counts might, by the rules of pleading, be joined? These were offences in which but one could have participated. No one could be guilty of the offence of another person's enlisting himself, which was the offence in these counts charged. Each of these counts charged four persons jointly with an of-

fence which by law is several only, and can under no circumstances be joint. These counts must be stricken out.

The district attorney then entered a nolle prosequi as to these counts. The case of the government was then offered to the jury. The district attorney said that the defendants were charged with having hired or retained certain parties to go beyond the limits of the United States to be enlisted; that he should not hold himself to prove any particular case or act of such hiring or retaining, but give such evidence to the jury as would justify them in inferring such hiring or retaining. As to the word "retain" in the statute, he contended that any holding by consent or by deception, or by force, was sufficient to bring the defendants within this statute. As to the "intent" spoken of in the statute, it would be sufficient to show such intent on the part of the persons here arraigned, without showing the intent of the parties hired or retained by them. The evidence would show that some eighteen or twenty men were by various means inveigled on board a British brig, the Buffalo, at New York, under the representation that they were to be employed as laborers and mechanics at their various trades. Some were told that they were to work on a railroad at Halifax; others, that they were to work on farms. That by these representations they were induced to go on board the Buffalo, in order to take them to Halifax, to enlist for the Crimea; that the whole thing was no better than kidnapping. One of these men was to go to Hartford to work at his trade as a saddler, and did not know the vessel was not bound there till two days' out. Some of them doubtless understood they were to go to Halifax, and could enlist if they wished. They were all taken on board the Buffalo, and after being two days out she was obliged to put in at Tarpaulin Cove for water, where they were found and arrested by the revenue cutter James Campbell, and brought to this city.

The witnesses for the government were then called, and evidence was put in at great length, tending to show that various third parties on board the Buffalo were induced to take passage in her and leave the limits and jurisdiction of the United States through the deception of some one, whether of these defendants it did not appear; but no connection was attempted to be made out between these defendants themselves and the parties on board, previous to their departure from New York, and no agency of these defendants was shown in such deception. After this testimony was in, the prosecuting attorney said he should at that point ask an intimation from the court as to the necessity of proving the "intent" of the persons hired and retained on board the Buffalo. He said, if it was necessary to prove the intent of the passengers, who were alleged to have been hired and retained to be enlisted, it

would be necessary to show it by the testimony of other persons, for their confession would render the parties themselves, who were hired, liable to the penalties of this same act, and they could not be called to criminate themselves.

The counsel for the defence contended that it was necessary to prove "intent" of the persons alleged to have been retained to be enlisted, but the attorney's construction of the statute was wrong. It was no crime to be hired, no offence against this statute, and the parties themselves who were hired were the proper persons to testify as to their "intent," and this was the only testimony that could be admitted to prove it. The declarations to third persons of the persons hired would not be admissible.

SPRAGUE, District Judge, held that third persons would not criminate themselves by testifying that they were leaving the country with the "intent" to enlist in a foreign service; that for the present the prosecuting attorney could proceed on the supposition that it was necessary to prove such "intent" on the part of those retained. As to the question of the admission of the declarations of these third parties, it would be decided when they were offered. The district attorney then offered testimony to prove that certain passengers on the Buffalo had admitted that they intended to enlist when they got to Halifax, and said they were willing to enter the British army; that afterwards they denied the fact, and would, if placed on the stand, now deny it. It therefore became necessary to prove it by their declarations. He said he wished to introduce such testimony under the sixth and seventh counts, and under the allegation of "persons unknown." He should offer it in regard to all the seventeen on board the Buffalo as steerage passengers. He proposed to connect these defendants with the acts and declaration he offered to prove, but they were offered primarily as proof of intent of the persons hired. He said he could not prove that each knew the others' "intent," but he proposed to prove that each had the "intent" independently.

It was argued for the defence that this testimony was admissible, if at all, only as to Vigne and Colavel; and, as to them, only under the sixth count, where their intent was alleged. Now it was claimed to be admissible as to all the other passengers' on the Buffalo, under the name of "persons unknown." Certainly every person on the Buffalo was known. Nothing in regard to their sayings and doings could be admitted under that count; and the moment the testimony was offered in regard to such passengers, as persons unknown, it would appear they were known, and the proof would vary from the allegation. Take, for instance, the name of Fisher, in the fifth count. Could any of his admissions be put in under the seventh count? And yet the prosecuting attorney

says the "persons unknown" are the whole seventeen. Then as to the persons named in the sixth count, their "intent" could certainly not be proved under the allegation in the seventh count, for they were evidently not persons unknown, and yet they were part of the seventeen. Then the two persons named in the sixth count are the only ones whose "intent" could be proved under the allegation in the indictment, and that only under that count. Otherwise there would be a variance between the allegations and proof.

Now, as to the testimony by which it is proposed to prove this "intent." It is proposed to prove it by admissions of third parties in regard to what had previously taken place; that is, as to the "intent" they had when they were hired or retained in New York. This was the only place where there was any hiring or retaining proposed to be proved, and the evidence, if admitted, would only go to prove the "intent" of an offence committed, if at all, out of this district, and to prove it by declarations made after the acts, of a previous "intent." Then it was admitted by the prosecuting attorney that the persons whose intent it was proposed to prove, would, if called, testify that they not only had made no such declarations, but they had no such intent as the declarations would seem to imply. Certainly these persons were the best witnesses to their intent. They were here,—they were in the hands of the government. There had been no evidence of any hiring by defendants while at Tarpaulin Cove; consequently, any evidence of the "intent" of these third parties there, would be irrelevant.

SPRAGUE, District Judge, held that for the purpose of showing the intent with which these persons were going to Halifax, on board the Buffalo, their declarations while on board and on their way might be given in evidence, but that this must be confined to declarations made of their intentions while within this district. and that no declarations made here of prior intentions at New York could be given in evidence, and that such evidence would not affect the defendants without proof of a hiring or retaining by them within this district. The evidence offered related only to the persons named in the sixth count. Whether it was admissible under the seventh count need not here be decided.

Evidence was then introduced of various conversations of the third parties on board the Buffalo, while lying at Tarpaulin Cove, showing a willingness of such persons to go to Halifax to enlist in the British army. Defendants were not present at any of these conversations. and there was no evidence of their knowledge of them. or of the willingness of these third parties to go to enlist.

The case for the government was here closed.

SPRAGUE, District Judge. The fifth count

is not sufficient. It does not allege the intent of the persons hired: this is necessary. This second section creates three distinct offences; the second and third. are coupled together. They consist in hiring or retaining another person to enlist here, or to go without the limits of the United States with intent to be enlisted. To constitute the offence of enlisting here, it requires the consent of the party enlisting; and so also the hiring or retaining a person to go abroad with intent to be enlisted, requires assent and intent on the part of the person hired or retained. It is to be further observed, that the word "retain" follows the word "hire." We should not expect to find it used in a meaning opposite to that of "hire," and opposite to its own usual signification. Suppose it to be used in the sense of detain, and apply it to the enlisting of men here. It at once becomes impossible. It must be used in a sense that will apply to both. The nearest term is probably "engage," and it is used like the word "retaining," when speaking of retaining counsel. It is an "engaging" of one party by the other, with the consent and understanding of both. The next question arising is, was there any retaining within this district? The hiring and retaining here, and the intent with which they were so hired or retained, must be proved. These parties may have been deceived and betrayed in their supposed voyage to Halifax to obtain work. If the defendants induced them to go, they are not to be excused; but they are liable in some other form,—not in this, if at all.

After reviewing and analyzing the evidence at length, the jury were instructed that there was not sufficient evidence to support a verdict of guilty, and they returned a verdict accordingly, and two of the defendants were discharged. Two of them were held to answer to a similar indictment. In this the point was presented of agency in obtaining these enlistments. The district attorney said he should offer evidence to prove that the defendants employed a man by the name of Kaufman to bring certain persons from New York to Boston, and that those persons, after they came to Boston, went to Halifax and enlisted, and that Kaufman aided and assisted them in so going to Halifax.

SPRAGUE, District Judge, held that these facts, if proved, would not be sufficient. A distinct hiring or retaining by the defendants must be shown. It might be done through agents, but these agents must be shown to be agents for this purpose and acting under the defendants. There is nothing here to show these defendants were not the agents of the persons sent on here under Kaufman. They might have wished the defendants to procure them a passage, or the means of going out of the jurisdiction to enlist. If a captain of a vessel should know that all his passengers were going out of the United States for the purpose of enlisting, or

were hired or retained to go, he would not be liable: he is as much the agent of the person hired as the one hiring,—and he might have the knowledge and commit no offence. It would be no crime to obtain a ticket or hire a cab for the person who was hired or retained to go beyond the limits of the United States to enlist. These parties might all be countrymen, and these defendants, possessing the most information, might aid the others and go with them to obtain a passage. This was no crime. They were but the agents of the persons they were advising and assisting. All that was offered to be proved here was, that defendants sent one Kaufman from New York with men to go to Halifax: no proof of the intent of the persons sent on,—no proof of the intent of defendants in sending them. If the agent hired them to go to Halifax, under that state of facts, as soldiers, he alone was liable. Kaufman might have made an agreement with these men to commit highway robbery. if he had chosen. and in that he could not be the agent of defendants. These persons may have employed these defendants as their agent, from their superior knowledge, to assist them in getting to Halifax to enlist. In such a case they would properly be said to "retain" these defendants, not these defendants them.

The jury were thereupon instructed that the evidence offered would not be sufficient to support a verdict of guilty. The jury thereupon returned a verdict of not guilty, and defendants were discharged.