[Civ. No. 1171. First Appellate District, Division One.—August 29, 1924.]

## THE PEOPLE, Respondent, v. CHARLES DILLON, Appellant.

[1] CRIMINAL LAW—FALSE ACCOUNTS OF PUBLIC MONEYS—JOINT INDICTMENT OF COMMISSIONER AND DEPUTY—DEMURRER.—An indictment charging a city commissioner of finance and one of his deputies with a violation of subdivision 3 of section 424 of the Penal Code is not subject to demurrer on the ground of alleged duplicity and uncertainty, where the trust of the two officers, so far as the particular crime alleged in the indictment is concerned, whether stated disjunctively or jointly, is one, and that one is the trust reposed by the city charter in the defendant commissioner of finance, the only trust reposed in his codefendant being by reason of his deputyship.

[2] ID.—PLEADING—PROOF—VARIANCE.—The fact that the evidence in such prosecution does not show that the defendant commissioner of finance falsified a single entry in the register of licenses in question does not constitute a fatal variance between the allegations and the proof, as the defendant commissioner of finance may be charged with such falsification by evidence showing or tending to show that he directed or co-operated in falsification of other records, following which, in regular sequence, the falsification of the register of license was accomplished.

---

1. See 14 Cal. Jur. 58; 14 R. C. L. 194.
2. See 14 Cal. Jur. 94; 14 R. C. L. 206.

[3] ID.—DEPUTY AS ACCOMPLICE—EVIDENCE—CORROBORATION.—In this prosecution in which a city commissioner of finance and one of his deputies were charged with a violation of subdivision 3 of section 424 of the Penal Code in connection with issuance of city licenses, and in which a dismissal was requested and granted as to the deputy that he might become a witness for the people, the inculpatory evidence corroborating the testimony of said deputy was sufficient to connect the defendant commissioner of finance with the offense charged in the counts of the indictment relating to "fractional" licenses, or those on which the amounts were written in, both on the licenses and stubs, but the evidence was insufficient, for the purposes of corroboration, to justify a conviction on the counts of the indictment having to do with "trader" licenses, in which the amounts were fixed and printed.

[4] ID.—PRIOR TRANSACTIONS—EVIDENCE.—In such prosecution, prior transactions relating to "fractional" licenses outside of the indictment were admissible for the purpose of showing knowledge and intent with reference to the issuance of "fractional" licenses.

[5] ID.—DISMISSAL OF INDICTMENT AS TO DEPUTY—EXAMINATION AS TO PRIOR TRANSACTIONS.—In such prosecution, although the deputy was not being tried for any offense, the action having been dismissed as to him under sections 1099 and 1101 of the Penal Code, and he could not claim the right to refuse to incriminate himself as to matters charged in the indictment under which the prosecution was being had, he was not barred from so doing as to prior matters not charged in such indictment and to which his dismissal did not acquit him; and the rejection of evidence by the court of previous acts of said deputy to show his motive in doing the acts testified to as an accomplice under such indictment was proper.

[6] ID.—RECORD OF LICENSES—BOOKS REQUIRED BY LAW—FOUNDATION EVIDENCE.—In such prosecution, the defendant commissioner of finance was not materially prejudiced by the ruling of the trial court admitting in evidence a register of licenses, over defendant's objection that the proper foundation had not been laid—the specific objection being that the indictment charged the keeping of false accounts in a register of licenses, and that no showing had been made that the commissioner of finance was required to keep any such book, where the charter, which was in evidence, provided that accounts be kept by such officer, and all the evidence showed that the register of licenses was a record of license collections long recognized and used as such.

---

3. See 8 **Cal** Jur. 177; 1 **R. C. L.** 168.
4. See 8 Cal. Jur. 63; 8 **R. C. L.** 181.
5. See 8 **R. C. L.** 77.
6. See 8 Cal. Jur. 133; 10 Cal. Jur. 865.

[7] ID.—INTENT—FINANCIAL AFFAIRS OF DEFENDANT—IRRELEVANT EVI-
DENCE.—In such prosecution, evidence of defendant's earnings,
financial condition, and disposition of money received by him
during the period covered by the transactions of the indictment,
particularly the fact that he had a private bank account, would
not necessarily tend to prove lack of intent with respect to the
particular crimes charged, and the prosecution's objection to
such evidence on the ground of irrelevancy was properly sustained.

[8] ID. — DISMISSALS AS TO ONE DEFENDANT — DISCRETION OF TRIAL
COURT.—Sections 1099 and 1101 of the Penal Code, relating to
the dismissal of an indictment as to one defendant that he might
become a witness for the people, contain no provision for the
introduction of evidence in support of objection to such dismissal,
and, therefore, the matter is in the discretion of the court at
the motion of the district attorney.

[9] ID.—PRESUMPTION OF INNOCENCE—REASONABLE DOUBT—INSTRUC-
TIONS.—In such a prosecution, where the trial court has given two
instructions covering the subject of presumption of innocence and
reasonable doubt which have received the thorough approval of
the reviewing courts, the defendant cannot be said to have been
prejudiced by the refusal of the trial court to give additional
instructions requested by him on the subject and which contain
elements relating to his particular case.

[10] ID.—SEVERAL COUNTS—REASONABLE DOUBT—INSTRUCTIONS.—In
such prosecution, the court having instructed the jury on reason-
able doubt, and also stated to the jury that there were thirteen
counts in the indictment, on each of which they might find the
defendant guilty or not guilty, and called attention to the forms
covering each count, and the jury having been further advised
that the defendant was charged with the crime of knowingly
keeping a false account of public money, set out in thirteen
separate and distinct counts, and that the indictment had been
read by the clerk, and the indictment so read having clearly
stated thirteen separate crimes in as many counts, the defendant
was not prejudiced by the refusal of the trial court to give an
instruction requested by him which stated that a separate crime
was charged in each count and that the rule as to reasonable
doubt was to be applied to each count, although such instruction
might properly have been given.

[11] ID.—CIVIL AND CRIMINAL LIABILITY—CONFUSING INSTRUCTION.—
In such a prosecution, an instruction on the difference between

7.  See 8 Cal. Jur. 46.
8.  See 7 Cal. Jur. 1003.
9.  See 8 Cal. Jur. 314.
10. See 8 Cal. Jur. 628; 2 R. C. L. 261.
11. See 8 Cal. Jur. 316; 14 R. C. L. 784.

civil and criminal liability, and which contains elements proper in instructions in civil actions but which are foreign to such criminal prosecution, can only tend to confuse the jury, and are properly refused.

[12] Id. — Admissions by Defendant — Weight — Instructions.—In such prosecution, an instruction that testimony as to admissions and declarations by the defendant were to be viewed with caution, even though it might have been proper, cannot be deemed to have prejudiced defendant in the light of his own testimony.

[13] Id.—Circumstantial Evidence—Instructions.—In such prosecution, a definition of circumstantial evidence following an instruction that corroboration of an accomplice's testimony may be had in that manner would no doubt have been proper, but the refusal to give such instruction could not have been prejudicial in view of the fact that the jury was told that it was to act on the evidence received, from which the jury must have understood that of that evidence part was circumstantial.

[14] Id.—Corroboration of Accomplice—Circumstantial Evidence—Erroneous Instructions.—In such a prosecution, instructions which tell the jury that corroboration of an accomplice's testimony may be had by circumstantial evidence, but that the circumstances must show the guilt of the defendant beyond a reasonable doubt, are properly refused, as such instruction would not be in conformity with the provisions of the statute relating to the testimony of an accomplice, as permitted in criminal cases for all purposes save conviction, but would place the burden of proof of guilt entirely on other evidence.

[15] Id.—Reasonable Doubt—Province of Jury.—The doctrine of reasonable doubt is that the jury, before they can render a verdict of guilty, must be convinced beyond a reasonable doubt that the defendant is guilty of the offense charged. Of course, the jury must base their conclusion upon the evidence submitted to them, but there is no legal requirement that they must believe any part or portion of the evidence; and it is only required that they believe that their conclusion as to the defendant's guilt is the true one. (Opinion on denial of rehearing.)

[16] Id.—Corroboration of Accomplice—Requirements of Code.—The requirement of section 1111 of the Penal Code is in addition to the requirement of the doctrine of reasonable doubt; and

12.   See 8 Cal. Jur. 348; 14 R. C. L. 750.
13.   See 8 Cal. Jur. 180, 349; 1 R. C. L. 171.
15.   See 8 Cal. Jur. 181; 8 R. C. L. 218.
16.   Conviction on testimony of accomplice, notes, 71 Am. Dec. 671; 34 Am. Rep. 408; 98 Am. St. Rep. 158. See, also, 8 Cal. Jur. 172; 1 R. C. L. 166.

it in effect says that even though the jury are convinced to a moral certainty that the defendant is guilty, yet they must acquit him if the testimony of the accomplice is not corroborated by other evidence which connects or tends to connect him with the commission of the offense charged. (Opinion on denial of rehearing.)

[17] ID.—SEVERAL COUNTS—INSUFFICIENT CORROBORATION—APPEAL— PARTIAL REVERSAL.—In a prosecution for a violation of subdivision 3 of section 424 of the Penal Code, where the indictment contains several counts, each stating a separate complete criminal offense, and the jury renders a separate and complete verdict under each count, and in the judgment the trial court specifically enumerates each count, the appellate court, on appeal, may affirm the judgment, in so far as it refers to the counts as to which the testimony of defendant's accomplice is sufficiently corroborated, and reverse the judgment as to the counts with reference to which the necessary corroboration is lacking. (Opinion on denial of rehearing.)

(1) 31 C. J., p. 664, sec. 181, p. 756, sec. 317.  (2) 26 C. J., p. 952, sec. 100 (Anno.).  (3) 16 C. J., pp. 712, 713, sec. 1458. (4) 16 C. J., p. 589, secs. 1136, 1137, p. 693, sec. 1416.  (5) 40 Cyc., p. 2543 (Anno.).  (6) 17 C. J., p. 330, sec. 3672.  (7) 26 C. J., p. 966, sec. 128 (Anno.).  (8) 16 C. J., p. 693, sec. 1416 (Anno.). (9) 16 C. J., p. 984, sec. 2390, p. 989, sec. 2395, p. 1063, sec. 2506. (10) 16 C. J., p. 989, sec. 2395.  (11) 16 C. J., p. 1036, sec. 2477, p. 1041, sec. 2482.  (12) 17 C. J., p. 350, sec. 3707.  (13) 16 C. J., p. 1008, sec. 2433.  (14) 16 C. J., p. 711, sec. 1457, p. 1002, sec. 2416.  (15) 16 C. J., p. 778, sec. 1590, p. 780, secs. 1593–1998. (16) 16 C. J., p. 698, sec. 1426.  (17) 17 C. J., p. 370, sec. 3757.

APPEAL from a judgment of the Superior Court of Fresno County. J. E. Woolley, Judge. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Lindsay & Conley for Appellant.

U. S. Webb, Attorney-General, Wm. F. Cleary, Deputy Attorney-General, George R. Lovejoy, District Attorney, Denver S. Church, Assistant District Attorney, and Gilbert Jertberg, Deputy District Attorney, for Respondent.

ST. SURE, J.—The defendant, an elected officer, was commissioner of finance of the city of Fresno. He had pre-

viously held other municipal offices, among them collector of licenses.

The charter under which the commissioner of finance was charged with the receipt, safekeeping, transfer, and disbursement of public moneys consisting of license fees collected by the city from the issuance of licenses, and keeping accounts and records pertaining to the collection and receipt of license fees, went into effect April 25, 1921. Prior to this time the deputy, Erickson, had been city license collector, succeeding Dillon, the commissioner, in that position on the latter's appointment as city clerk in 1918. Dillon, after election as commissioner of finance under the new charter, and in the exercise of his charter powers, appointed Erickson a deputy commissioner of finance, and particularly, as such, city license collector. The duties of Erickson were assigned to him by Dillon.

Following an audit of his office by accountants engaged to expert the books of the city, the grand jury returned two felony indictments against defendant and Harry Erickson, his deputy, jointly. The charges of knowingly keeping false account of public money, as set out in the thirteen counts of the indictment in this action, were alleged to be the omissions from the register of licenses of amounts received from various concerns and individuals in exchange for licenses to do business in the city for periods of time, estimated by quarter years.

Motions to set aside both indictments were made on behalf of both defendants and denied, and demurrers filed on behalf of each, to both indictments were overruled. Motions for separate trial were made for each defendant and granted. The state elected to proceed under this action against Charles Dillon. On the third day of the trial motion was made by the district attorney for the discharge of defendant Erickson under sections 1099 and 1101 of the Penal Code, in this action and that based on the other indictment found by the grand jury that he might be a witness for the People. The motion was granted. Erickson was discharged and in due course became the chief witness for the People. Conviction was had on all thirteen counts. Motion for new trial was denied. The defendant was sentenced with the order that

the sentences on the thirteen counts run concurrently.   Appeal is from the judgment and order denying new trial.

Two sections of the charter were read into the record, which provided for a department of finance "under the management and control of an officer to be known as the Commissioner of Finance," and except as otherwise provided for, the commissioner of finance "to have control and jurisdiction over . . . levy, assessment and collection of . . . license fees . . . " and "Accounts shall be kept by the Commissioner of Finance showing the financial transactions for all departments of the City.   Forms for all such accounts shall be prescribed by the Commissioner of Finance. . . . "

The register of licenses, under the immediate charge of Erickson, was the ultimate book of account of license collections on which settlements were made monthly with the city treasurer.   This register was compiled from the collection sheets, which were made by collectors at the time of collection of licenses for which they were charged and on which they settled with the office nightly.   Licenses were of two kinds, "trader" and "fractional."   The trader licenses were of various fixed denominations with the amounts printed, licenses of each denomination being bound in separate books.   These were issued in advance for collection.   Fractional licenses were without printed amounts, collections therefor being made from data supplied, entered on the collection sheet and a receipt given the one paying.   The license was usually mailed later.   Fractional licenses were written up by Erickson, and the corresponding number placed by him on the stub.   With the license attached the book was then presented to Dillon, who filled in the stub.   Erickson wrote up licenses, issued them, often collected them.   Money received from the license collections was placed in a bank account of Dillon as commissioner of finance, and checks drawn thereon monthly in favor of the city in an amount shown to be due by the license register.   No check on this account was honored without Dillon's signature.   Authority to the city treasurer to receive money due, usually paid by Erickson, was signed by Dillon as commissioner of finance.

Erickson testified as follows: The "willful omissions" from the license register resulted from the falsification of records leading to it, such as erasures on collection sheets, fictitious

names, and smaller amounts being substituted; licenses issued and the money collected, with no subsequent entry; the falsification of stubs in the fractional license-book by Dillon, with a change in the collection sheets following to conform to the changed stub; renumbering and cancellation of licenses; the actual acts done, with the exception of the changed stubs, being by Erickson himself. These things were all done under Dillon's direction either to supply him with wanted money or to cover shortages occurring from time to time in the money in the safe of which he was advised by Erickson. Dillon and possibly others in the office besides Erickson had access to the safe. On being told of such shortages Dillon would instruct Erickson to cancel a license, renumber one, and fix it up; and promised that he would see no audit of the books was made. When the stub was changed by Dillon the difference between the stub and the actual receipt from the license went to him, at his request signified by a slip inserted, with the stub number thereon, in the fractional license-book. Sometimes Dillon gave Erickson part of the money resulting from changing the entry amount of a license issued. The real amount due for respective licenses was actually paid by the licensees.

To show intent and guilty knowledge, four other transactions involving fractional licenses, other than those set out in counts one and ten in the indictment, were testified to by Erickson, the stubs in each case being made out by Dillon, with names and amounts different and much less than the licenses bearing the same number, issued by Erickson.

Oyster, a public accountant engaged to audit the books of the city for the fiscal year, including the time of the counts of the indictment transactions and the four others mentioned above, testified that no entries of the licenses under the indictment counts appeared in the register of licenses, nor for the four transactions introduced to prove intent and knowledge.

The People called witnesses connected with the various concerns which had paid for and received licenses on which charges of the indictment were made, who established that such payments had been made and the license received. In most of these cases the check and license both were put in evidence.

Evidence of Collector Robinson showed that entries on his collection sheets had been changed by erasures and substitution of names and smaller amounts in Erickson's writing.

On counts one and ten the stubs for the licenses actually issued by Erickson were stipulated to be in Dillon's handwriting, and showed the entry in count one of the same name as appeared in the license, but only the word "trader" appeared on the stub in count ten transaction, the licenses under both counts having been issued for different periods to the Hippodrome Theater. The amount of the first stub was $18 for a license of $180, and that of the tenth $15.50 for a license of $155. Entries of these fictitious matters being carried into the license register from the collection sheets, changed to accord with the amounts of the stubs by the entry of "Mrs. Keen, restaurant, $18" for the first and "Highway Grocery, $15.50" for the tenth.

The four transactions not contained in the indictment, introduced to show knowledge and intent as to counts one and ten were matters of fractional licenses, the licenses being in Erickson's writing, the stubs being in Dillon's writing, and so stipulated; collection sheets therefor had been changed to accord with the stubs, as in counts one and ten of the indictment, and such fictitious names and amounts had been carried into the license register.

Dillon himself had been the license collector in past years.

An examination of the books for the fiscal year ending June, 1922, on which one section of a report on the books of the city was based, was made and filed with the city commission by one L. T. Stephenson. He testified that in conversation with Dillon at the time of making of a report, the latter called his attention to the fact that books mentioned in the report as books of the city clerk were in fact books of the commissioner of finance, and the report was rewritten in Dillon's office on that account. The auditor noticed, after he signed the rewritten report, that one word had been changed, making the sentence of the original "Blank license receipts are not numbered before being issued to the License Collector," read "Blank license receipts are numbered before being issued to the License Collector."

On the present audit Oyster, the public accountant, testi-
fied to a conversation with Dillon, in which he asked the
latter what precautions had been taken to insure the city
getting the full amount collected on fractional licenses; to
which Dillon replied that such licenses were made out by
Erickson and the stubs by himself while the licenses were
still attached. Cox, Oyster's assistant, was present at this
conversation, and testified to the same effect. Oyster had
made a memorandum of the conversation at the time it
occurred and both he and Cox had initialed it. Oyster also
testified that a large number of stubs were missing from
those turned over for audit, and when Dillon was asked to
find them was unable to do so for the stated reason that they
had probably been dropped into the waste-basket to make
needed room on the shelves in the vault. When asked if
those thrown away included any stubs for the current fiscal
year, he replied that they undoubtedly did.

Oyster also testified that fictitious names and smaller
amounts appeared in the license register for the same num-
bers as those of the licenses actually issued and for which
greater sums were paid; both under counts one and ten in
the indictment and the four transactions to show knowledge.
For the other counts in the indictment he testified that no
entries of the licenses issued and paid for appeared in the
register of licenses, nor did licenses under duplicate numbers
issued and paid for. For some of the other counts than one
and ten, he testified that entries under the same numbers
as on the original licenses were for greatly smaller amounts
and for fictitious names.

Milton Carlson testified that the respective licenses and
stubs testified to as belonging to the same transaction had
been originally attached to each other.

Ella BeVcre, a witness for the People in rebuttal, testified
that the fractional licenses were written by Erickson and
the stubs by Dillon while the licenses were attached; she
never saw slips of paper in the book; she had worked in the
office for more than a year. She also stated that Dillon
had thus made the stubs for Erickson's licenses prior to the
adoption of the charter.

Cross-examination of Erickson showed his statements be-
fore the grand jury, consisting for the most part in declara-

tions of ignorance of any wrongdoing in the office, lack of suspicion as to who might be guilty of crime, and ignorance of how certain entries were made and others omitted, and denials of his complicity in any of such affairs, to be false.

Dillon's testimony was a denial of any complicity in any of the matters under or independent of the indictment, testified to by Erickson. He denied that the stubs of fractional licenses were always made out while the licenses were attached; frequently, he said, the licenses were loose, or the licenses were gone and slips of paper left from which the stubs were made. He testified that he never had any idea that there was anything wrong in the office until the trial of this action began, and that he had always had the utmost confidence in Erickson. He denied all knowledge of any of the matters under other counts than one and ten of the indictment. He never made an entry in the register of licenses. The whole department was under Erickson's direction, and all matters pertaining thereto were referred to him. He discharged Erickson after this action was brought.

Twenty-four character witnesses testified in Dillon's behalf. Their general statement was that they had lived in the city many years, had known him for varying periods, and that his reputation for truth, honesty, and integrity was good.

The appellant raises the following points for a reversal of the judgment: (1) The indictment is fatally defective, particularly on the grounds of duplicity and uncertainty, and demurrer interposed thereto on such grounds should have been sustained; (2) There is a fatal variance between the allegations of the indictment and the proof; (3) The evidence was insufficient to justify the verdict; (4) Errors in the admission and rejection of evidence; (5) Error in granting motion to dismiss charge against one defendant without permitting codefendant to offer evidence in support of objection thereto; (6) Error in refusing to give certain instructions requested by appellant.

[1] 1. The demurrer to the indictment alleged duplicity and uncertainty. The argument on this point is that under subdivision 3 of section 424 of the Penal Code, under which this indictment was brought, "each officer of this state, or of any county, city, town or district of this state . . . charged

with the receipt . . . of public money, who . . . 3. Knowingly keeps any false account . . . '' thereof, is guilty of a felony; and that under this section but *one* officer can be guilty as such officer of such crime; and though each might be the accessory of the other, he could not be such accessory in his capacity as an officer, even though accessories are now indictable as principals. Appellant admits that more than one person may be joined in an indictment for violation of section 424 of the Penal Code, and that an accessory, officer or not, might be convicted thereunder as a principal. "But," he says, "the crime must have been committed by the public officer," and it must be so alleged in the indictment. In this connection he advances the proposition that each of the officers here, one a deputy of the other, were charged as officers with separate trusts. True, he says, each count of the indictment recites that both as officers "were charged with the receipt," etc., but since the same offense cannot be committed by two officers, there are two distinct offenses stated in each count, not countenanced by section 954 of the Penal Code, permitting the statement of different offenses in different counts of the same indictment.

We cannot see that the fact that both defendants were officers changes the rule of accessories being indicted as principals, and though the distinction that appellant seeks to make is clear, we think it untenable. The trust of the two officers here, so far as the particular crime alleged in the indictment, whether stated disjunctively or jointly, was one, and that one the trust reposed by the charter in the commissioner of finance. Only by virtue of his deputyship was such trust reposed in Erickson. It is not true, then, that as public officers they could not together directly commit the same offense. The following language from *Sarter* v. *Siskiyou County*, 42 Cal. App. 530, at page 536 [183 Pac. 852], illustrates the point: "The deputy's official acts are always those of the officer. . . . When, therefore, the law provides that it shall be the duty of a certain public officer to do or perform certain public official acts, the deputy of such officer, if there be one, is necessarily included within the terms of the provision." To follow appellant's argument to its conclusion, each item of each offense committed by each officer, though together resulting in but one charge under

the statute, should be made the basis of a separate indictment.

The case of *People* v. *Bartnett,* 15 Cal. App. 89 [113 Pac. 879], is not in point for the purpose for which it is cited. There the charge was embezzlement of certain bonds by one as special administrator, under section 506 of the Penal Code. The bonds were not in the possession of the administrator either as such or as an individual, but in the custody of a certain trust company subject to the orders of the court, and embezzled by an officer of such trust company. The trust violated was not that of the administrator.

The case of *State* v. *Lehman,* 182 Mo. 424 [103 Am. St. Rep. 670, 66 L. R. A. 490, 81 S. W. 1118], cited by the attorney-general, is that of a joint indictment of sixteen public officials for bribery, an agreement having been made by them to vote on a certain measure in a certain manner in exchange for the promise of a sum of money to be paid them. The exchange of such promises constituted bribery under the statute. It was held that though each made the corrupt agreement, the agreement was but one transaction resulting from the joint acts of all, and proper to be charged in one indictment. This case, however, held that the agreement was the essence of the charge, not the several voting in pursuance of such agreement. It is, therefore, similar to a charge of conspiracy and does not exactly answer appellant's contention. The remaining cases cited by appellant on this point are those where the defendants were jointly charged with offenses necessarily several in their nature; such as enlistment against the Neutrality Act (*United States* v. *Kazinski,* 2 Sprague, 7 [Fed. Cas. No. 15,508]), failure to work on a public road (*State* v. *Wainright,* 60 Ark. 280 [29 S. W. 981]), and perjury (*Walker* v. *Commonwealth,* 162 Ky. 111 [172 S. W. 109]; *State* v. *Herrera,* 28 N. M. 155 [207 Pac. 1085]); or for violation of different trusts by virtue of official position (*State* v. *Hall,* 97 N. C. 474 [1 S. E. 683]), audit and finance committee and mayor and alderman (*Commonwealth* v. *Miller,* 2 Pars. Eq. Cas. (Pa) 480).

We believe the case of *State* v. *Byhre,* 137 Minn. 195 [163 N. W. 282], is directly in point on this question. There an indictment charged defendants, one as county auditor, the other as a county commissioner, with becoming

unlawfully interested in a certain county contract, under a statute stating that "no county officer" should so become interested, and prescribing penalties for violation. It was held that the indictment did not charge more than one offense, the duty being the single one of county officer, though shared by two officers of different positions. The case of *State* v. *McAninch,* 172 Iowa, 96 [Ann. Cas. 1918A, 539, 154 N. W. 399], was cited with approval. The latter case, holding a joint indictment good which charged more than one defendant with practicing medicine without obtaining a certificate, reviews the cases on this point, and also disposes of the points raised that proof that either did what is charged would not accomplish the proving of any joint act; and that where a joint act is charged, and the proof be that either or all of the defendants did the act severally, there can be no legal conviction of either or both under the joint indictment. The points raised are exactly those raised here; and though it is first held that duplicity in an indictment is not reached by demurrer, the court waived the strictness of the rule, and decided the questions presented on the ground that the manner in which they were presented was proper. The ultimate proposition in the case, according to the statement of the court, is that upon such premises it is apparent on the face of the indictment that any trial had thereunder must end with a fatal variance between plea and proof. This is the exact contention here. It follows, then, that in this case the demurrer was properly overruled on the ground of duplicity, and that if the indictment did not charge more than one offense in a count, that it was not uncertain, the uncertainty charged being on that ground.

[2] 2. It is next urged that there is a fatal variance between the allegations of the indictment and the proof. This specification is based on the alleged defects of the indictment just discussed, in that Harry Erickson, deputy commissioner of finance, is charged jointly with Charles Dillon, commissioner of finance, and whereas the latter is held for trial under the indictment, and the indictments against the former dismissed to make him a witness for the People, the former was, by his own testimony, and that of others, the real criminal, doing all the actual changing of the records whereby the register of licenses was falsified. The argu-

ment is that there is no testimony in the case, nor any evidence, that shows or tends to show that Charles Dillon falsified a single entry in the register of licenses. As a concrete statement, standing alone, this may be true, but the fact that he did not personally make such entries does not alter the rule that he may be charged with such falsification by evidence showing or tending to show that he directed or co-operated in falsification of other records following which, in a regular sequence, the ultimate falsification of the register of licenses was accomplished. The case of *People* v. *Bartnett, supra,* cited to the point of duplicity of the indictment, is used to support the argument on variance of proof. We cannot see that appellant is helped by it. Almost identical with this point, in effect, is the insufficiency of the evidence, which we will next consider.

3. Appellant contends that the evidence is insufficient to justify the verdict, and this presents a serious question.

[3] Counts one and ten of the indictment dealt with "fractional" licenses, or those on which the amounts were written in, both on the licenses and stubs. The remaining counts had to do with "trader" licenses, in fixed denominations of several different amounts. On counts one and ten the stubs, changed in amounts, were written by Dillon, on the licenses made out by Erickson. The collection sheets were changed by erasure and entry of fictitious matters by Erickson, and under his supervision carried into the license register. In addition to the stipulated fact that these stubs of counts one and ten were in Dillon's writing, and admitted by him so to be, there is the testimony of Oyster, the auditor, and Cox, his assistant, regarding Dillon's statement during the current audit, of the method used in handling fractional licenses to insure the city receiving the full amounts collected for the licenses; Dillon's statement that he used such a system because other auditors suggested it; the fact that he had formerly been license collector himself, with the deducible inference therefrom that he would know that the amounts of the stubs on these counts were hugely disproportionate to the amount due from the business represented. There was also the fact of the destruction of the stubs, capable of two constructions. This evidence, coupled with the fact that appellant was an officer charged with a

heavy financial trust, surely tends to corroborate the testimony of the accomplice Erickson that Dillon commanded or co-operated in the fraud thus practiced on the city.

The test, it has been suggested, as to what is sufficient corroboration under section 1111 of the Penal Code forbidding a conviction upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense, is this: "Eliminate from the case the evidence of the accomplice, and then examine the evidence of the other witness or witnesses with the view to ascertain if there be inculpatory evidence—evidence tending to connect the defendant with the offense. If there is, the accomplice is corroborated; if there is no inculpatory evidence, there is no corroboration, though the accomplice may be corroborated in regard to any number of facts sworn to by him." (*People* v. *Morton,* 139 Cal. 719, at page 724 [73 Pac. 609], citing *Welden* v. *State,* 10 Tex. App. 400.) True, the defendant also made statements opposed to some of the testimony narrated above, but "the jury had the right to act upon the portion of his testimony that was more unfavorable to his cause." (*People* v. *Desmond,* 24 Cal. App. 408 [141 Pac. 632].) "The evidence outside of that of the accomplice need not be sufficient to establish the guilt of the defendant, but it must in some way tend to implicate the defendant and connect him with the transaction and with the crime. This is sufficient." (Citing *People* v. *Kunz,* 73 Cal. 313 [14 Pac. 836]; *People* v. *Barker,* 114 Cal. 617 [46 Pac. 601]; *People* v. *Bunkers,* 2 Cal. App. 197 [84 Pac. 364, 370]; *People* v. *Leavens,* 12 Cal. App. 178 [106 Pac. 1103].)

Viewing the evidence in the light of the presumption of innocence (*People* v. *Ho Kim You,* 24 Cal. App. 451 [141 Pac. 650]), and with respect only to counts one and ten, we believe there is sufficient to connect appellant with the subsequent false account in the license register by omission and fictitious entry. We cannot say the same as to the remaining counts of the indictment. There the amounts were fixed and printed; the falsification with respect to them consisted in false entries on collection sheets, the sale of blank licenses from the back of a book with no entry whatever; the duplication by number of a valid license sold and entered, for

which duplication there was no entry but the license sold and money collected thereon. All of these matters, confessedly done by Erickson, could well have been done—so far as any evidence for the purpose of corroboration is concerned—without any knowledge, direction, or co-operation of Dillon, when tested by the same presumption of innocence, regardless of the fact that the jury may have believed him guilty. We cannot say, even with the help of section 4½ of article VI of the constitution, that this did not constitute a miscarriage of justice as to all the offenses except those of counts one and ten.

[4] 4. The prior transactions outside of the indictment were competent only for one purpose, and so admitted—that of showing knowledge and intent with reference to fractional licenses, separate offenses under the two counts one and ten. (Note to *Skyes* v. *State,* 105 Am. St. Rep., at p. 995; 62 L. R. A. 193, note; *People* v. *Bercovitz,* 163 Cal. 636 [126 Pac. 479], and note supplementing note in 62 L. R. A. 193, in 43 L. R. A. (N. S.) 667, at pp. 668 and 669; *People* v. *Hamby,* 55 Cal. App. 37, 40 [202 Pac. 907].) [5] The rejection of evidence by the court of previous acts of Erickson to show his motive in doing the acts testified to as an accomplice under this indictment was proper. Erickson was not being tried for any offense, and though he could not claim the right to refuse to incriminate himself under this indictment, he was not barred from so doing as to prior matters not so charged and to which his dismissal did not acquit him.

[6] Error is also claimed in the admission of evidence over the objection that the proper foundation had not been laid. This is on the ground that the indictment charged the keeping of false accounts in a register of licenses, and no showing made that the commissioner of finance was required to keep any such book. On this point the register was offered in evidence and the objection made that no ordinance with relation to the method of keeping accounts in the office of the commissioner of finance was produced. The district attorney stated that the people would produce the ordinance, but did not do so. Later the court ruled that it need not be produced. The charter, in evidence, provided that accounts be kept by such officer, and all the evidence showed that the register of licenses was a record of license

collections long recognized and used as such. The appellant was not materially prejudiced by this specified error.

[7] The appellant offered evidence of his earnings, financial condition, and disposition of money received by him during the period covered by the transactions of the indictment, particularly the fact that he had a private · bank account. Objection for irrelevancy was sustained, as we think properly. These were particular items of character which might prove any number of collateral issues and would not necessarily tend to prove lack of intent with respect to the particular crimes charged. General character of the appellant had already been testified to.

[8] 5. Error is claimed in the dismissal of the defendant Erickson on the motion of the district attorney without allowing evidence to be introduced in support of objection to such dismissal. There is no provision for the introduction of evidence in the sections under which such dismissals are allowed, and the matter is in the discretion of the court at the motion of the district attorney. The motion was argued, according to the record, and the trial court exercised its discretion under the statute.

6. Error in refusing to give instructions requested is the last point urged. Thirty-five instructions were requested by appellant. Two of them were given as asked. Appellant states that he has no complaint to make of the instructions actually given by the court, but that prejudice resulted from error in declining certain others. [9] Six of these were on the subject of presumption of innocence and reasonable doubt, on which the court had given two instructions which covered the subject and have received the thorough approval of the reviewing courts. That the six others were not given, with elements relating to this particular case, cannot be said to have prejudiced appellant's case.

An instruction requested by appellant and refused called attention to the elements of the case and consisted of ten subdivisions. A reading of it is sufficient to perceive that it would only have served to confuse rather than aid the jury, and was bound to be misleading unless carefully studied. [10] An instruction stating that a separate crime was charged in each count, and on reasonable doubt as applied to each count, was refused. The appellant claims that this

instruction was not covered by any given. The court had instructed the jury on reasonable doubt, and also stated to the jury that there were thirteen counts in the indictment, on each of which they might find the defendant guilty or not guilty, and called attention to the forms covering each count. In the prefatory part of his instructions to the jury the court stated that the defendant was charged with the crime of knowingly keeping a false account of public money, set out in thirteen separate and distinct counts, and that the indictment had been read by the clerk. The indictment clearly stated thirteen separate crimes in as many counts. Though the instruction might have been proper, we think these circumstances cured any prejudice which might have resulted.

[11] An instruction requested on the difference between civil and criminal liability was properly refused. As had been stated by appellant's counsel repeatedly during the trial, this was not a civil action, and an instruction containing elements proper in instructions in civil actions which were foreign to the issues here would tend to confuse the jury, and assumed the very issue in the case, namely, appellant's guilt, under the name "criminality." [12] An instruction that testimony as to admissions and declarations by the defendant were to be viewed with caution, even though it might have been proper, cannot be deemed to have prejudiced appellant in the light of his own record testimony. [13] A definition of circumstantial evidence following an instruction that corroboration of an accomplice's testimony may be had in that manner would no doubt have been proper, but could not have been prejudicial here in view of the fact that they were to act on the evidence received from which the jury must have understood that of that evidence part was circumstantial. [14] The instructions requested further in that connection, however, that the circumstances must show the guilt of the defendant beyond a reasonable doubt were properly refused. To so instruct the jury would be to fly in the face of the statute relating to the testimony of an accomplice as permitted in criminal cases for all purposes save conviction, and place the burden of proof of guilt entirely on other evidence, the very thing the statute was enacted to obviate.

On the whole, the instructions given were fair. Those refused, as set out by appellant, were covered by others given or by elements in the case sufficiently curing any prejudice that might have otherwise resulted.

For the reasons given we are of the opinion that as to counts one and ten the judgment of conviction and the order denying a new trial should be, and are, affirmed. As to all other counts of the indictment the judgment and order are reversed and a new trial ordered thereon.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 26, 1924, and the following opinion then rendered thereon:

ST. SURE, J.—Appellant makes application for rehearing and takes exception to language used by us in passing upon his point that "the case should have been reversed because of the error of the trial court in refusing to give certain instructions requested by the appellant as to the law of circumstantial evidence." Concerning this matter the opinion of the court is, as follows: "A definition of circumstantial evidence following an instruction that corroboration of an accomplice's testimony may be had in that manner, would no doubt have been proper, but could not have been prejudicial here in view of the fact that they were to act on the evidence received, from which the jury must have understood that of that evidence part was circumstantial. The instructions requested further in that connection, however, that the circumstances must show the guilt of the defendant beyond a reasonable doubt, were properly refused. To so instruct the jury would be to fly in the face of the statute relating to the testimony of an accomplice as permitted in criminal cases for all purposes save conviction, and place the burden of proof of guilt entirely on other evidence, the very thing the statute was enacted to obviate."

Appellant states that he fears we did not understand his argument. We think we clearly understood the point and the argument as made by appellant. It may be that the thought we desired to convey in our opinion is not aptly phrased. Surely it contains no expression which should em-

barrass appellant or his counsel. We merely disagreed with appellant's contention in regard to the requested instructions, as we do now.

Appellant says in his petition for rehearing: "There must be some proof in the case independent of the testimony of the accomplice tending to connect the defendant with the commission of the offense, and that proof must be competent proof, that is, proof beyond a reasonable doubt—not of guilt, but of circumstances tending in some degree to establish guilt." In our opinion that is not the law. [15] The doctrine of reasonable doubt is that the jury, before they can render a verdict of guilty, must be convinced beyond all reasonable doubt that the defendant is guilty of the offense charged. (Pen. Code, sec. 1096.) Of course, the jury must base their conclusion upon the evidence submitted to them, but there is no legal requirement that they must believe any part or portion of the evidence. It is only required that they believe that their conclusion as to the defendant's guilt is the true one. [16] The requirement of section 1111 of the Penal Code is in addition to the requirement of the doctrine of reasonable doubt; it in effect says that even though the jury are convinced to a moral certainty that the defendant is guilty, yet they must acquit him if the testimony of the accomplice is not corroborated by other evidence which connects or tends to connect him with the commission of the offense charged. On this point see instruction given in the case of *People* v. *Clough,* 73 Cal. 348 [15 Pac. 5], approved by the supreme court.

[17] Appellant makes the further criticism: "As far as we have been able to ascertain, this is the first time in California that a judgment of conviction in a criminal case has been affirmed in part and reversed and sent back for a new trial in part." In *People* v. *Wieler,* 55 Cal. App. 687, 694 [204 Pac. 410], the judgment was affirmed as to the first count contained in the indictment and reversed as to others. In the instant case each count of the indictment stated a separate and complete offense; the jury rendered a separate and complete verdict under each count; eleven of the thirteen verdicts were erroneous in that as to those counts the testimony of the accomplice was not corroborated by other evidence. As to the other two counts the testimony of the

accomplice was corroborated by other independent evidence. Thus as to the only error committed the counts were severable. In the judgment the trial court specifically enumerated each count, so it is clear that the judgment was passed upon each and every verdict. ''The appellate court may reverse a judgment of a lower court as to part and affirm as to part where the legal part is severable from that which is illegal.'' (17 Cor. Jur. 370, par. 3757.) Furthermore, our decision is in compliance with section 1260 of the Penal Code, which provides that an appellate court ''may reverse, affirm or modify the judgment.''

Petition denied.

Knight, J., and Tyler, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 28, 1924.

All the Justices concurred except Lennon, J., and Richards, J., who voted for a hearing in the supreme court.