[Crim. No. 1961. Second Appellate District, Division Two.—July 16, 1930.]

THE PEOPLE, Respondent, v. JOHN FRAHM, Appellant.

Charles J. Orbison and Samuel L. Rummel for Appellant.

U. S. Webb, Attorney-General and John D. Richer, Deputy Attorney-General, for Respondent.

GATES, J., *pro tem.*—By an information filed February 7, 1930, by the district attorney of Los Angeles County, appellant and one Thomas Kucera were charged with the crime of burglary, alleged to have been committed on or about August 13, 1929. The prosecuting attorney dismissed as against Kucera and the jury found appellant guilty of burglary, second degree. The court denied his motion for a new trial and he is here upon an appeal from the judgment and from the order denying his motion for a new trial.

The validity of appellant's contentions depends very largely upon the evidence received at the trial. It therefore becomes necessary to give a summary of the evidence introduced. Lawrence Anderson, who was in charge of the warehouse of the Foreman Soule Steel Company, the building from which the property is alleged to have been stolen, testified in substance as follows: That the warehouse is located at 6300 Wilmington Street, Los Angeles; that he was there August 13, 1929, and was the last person to leave, which was about 5 o'clock in the afternoon; that he locked up that night; returning at 7:45 the next morning, he observed that both the window and the lock had been "jammed"; that ten boxes of Economy nails, stucco nails and ten gallons of Quaker State oil were missing. The witness then examined a box labeled "No. 5 Economy Stucco Nails" and stated that he recognized the box and its contents as being similar to a box and contents taken from the Soule warehouse; that there was no particular mark upon them to identify them from any other Economy nails, but that the box was similar in appearance to the ones in the warehouse. He also examined two larger boxes each containing ten boxes of similar packages to the first one examined by him. His answer as to the similarity to the boxes missing from the warehouse was the same as his previous answer. He testified further that neither the appellant, Kucera, Norman, who was implicated in the alleged burglary, or Cass, who sold a quantity of the nails for appellant, or either of them, had any right or permission of access to the warehouse. On cross-examination the witness

testified that the Foreman Soule Steel Company was a wholesaler; that on August 13, 1929, it had around twenty-five large boxes of Economy stucco nails; that on the following morning all were there except ten boxes; that the number of nails was checked up morning and night; that there were no other small concerns handling these nails except two wholesalers.

Mr. Stoddard, assistant secretary and treasurer of the Soule Steel Company, was called by the People and testified that on August 13, 1929, the retail value of Economy stucco nails was $17.50 per case; that the wholesale value was $15 and that the value of the missing oil was $8.

N. H. Burkhalter, a deputy sheriff, testified that in a conversation with appellant the latter made a statement that the testimony of George Norman at the preliminary examination was "all wrong"; that that was not the way it happened at all. A little later he stated that after the trial he would tell how it transpired. Mr. Burkhalter also testified to a statement by George Norman. The material portions of this statement are that he, Norman, knew the appellant; that on the evening of August 13th he, Kucera and appellant went over to the Soule Steel Company in his car; appellant went into the building while he and Kucera acted as lookouts; that appellant pulled out the window and reached up under and took the bar out of the window—entered through the window and threw the nails out through the window; took approximately seven cases of the nails; that then he went home; that he knew he was committing a burglary. The statement from which the above excerpts were taken was typewritten and signed by both Norman and Kucera. The deputy sheriff further testified that he arrested Kucera and one Johnny Cass on December 4, 1929, at 1332 Orange Drive; that at the time Kucera was driving appellant's Auburn sedan, which contained five cases of nails; that one of the boxes contained Economy nails. The nails were taken from the car and identified as being similar to the ones taken from the Soule warehouse.

George Norman, who was eighteen years of age, testified in substance as follows: That he was present with appellant and Kucera on the night of August 13th at the Soule warehouse; that they went around there about 7:30 P. M. in his, Norman's, car; that appellant asked him to go there, and he,

258

Norman, asked Kucera to go with them; that they parked the car about two blocks north of the building; that appellant got out and went in the direction of the Soule warehouse. In approximately three-quarters of an hour he returned and told Norman to drive up the street. They stopped about fifty feet distant from the warehouse; that appellant went across a lot and walked east; that he did not see him enter the building; that appellant came back in a few minutes; was carrying boxes; that he put them in the car—put seven in the car; that he, Norman, never was at the warehouse on any other occasion; that later appellant paid him $15 for taking him to the warehouse. On cross-examination he testified that Kucera did not get out of the car; that he did not see Kucera get anything; that Kucera moved a box which was protruding out of the car into the car; that this was done at the request of Norman. He further testified that Kucera did not aid, advise or take part in moving any property that night; that he never told Kucera where the property was going to be taken that night. The witness also identified the box containing the nails produced at the trial as being similar to the cases which appellant placed in the car on the night in question.

Thomas Cass, one of the People's witnesses, testified that he has known appellant for the past six years; that he had a conversation with appellant in November, 1929, regarding the sale of Economy stucco nails; that in that conversation appellant told him to sell the nails for whatever he could get out of them; that he said he had to have $120; told him on one occasion to get $25 for two cases; that on the occasion he gave him the one case he said to get twelve and a half for it; that they were similar to the cases in evidence. He further testified that on the day of his arrest he had one case of Economy stucco nails; that he got the case from appellant—also the other cases. On the day he was arrested, according to his testimony, he had an engagement with appellant; was to meet him after he delivered the nails to a Mr. Dalton; that he was to give the money to appellant at that place; that when he attempted to deliver the nails he was arrested. The witness further testified that when he received the check of November 8, 1929, for $37.50 he delivered three cases of nails; that when he received a check of date October 12, 1929, for $25, he delivered two cases of

nails; that he delivered nails to Dalton on three different occasions; that on each occasion that he delivered the nails to Dalton appellant told him he had the nails on hand; that he received about $25 for the three deliveries of nails.

Mr. Dalton testified that he knew Frahm; that he purchased nails from Cass; that in the presence of appellant he discussed with Cass where to put the nails he had purchased; that he paid $12.50 per case for them; that the customary price upon the open market was from $14 to $20 per case. Other purchases were testified to by the witness which we need not discuss. The witness identified the nails in evidence as being similar to the ones purchased by him from appellant and Cass.

At the conclusion of Dalton's testimony the appellant moved for a dismissal of the case upon the ground that the People had not made a *prima facie* case connecting the appellant with the offense charged. The basis of the motion was that aside from the testimony of Norman, who was an accomplice, there was no evidence connecting appellant with the commission of the crime. Counsel for Kucera, appellant's co-defendant, made a similar motion. The district attorney then moved for a dismissal as to Kucera. Conspiracy was not charged. The court thereupon granted the latter motion and Kucera was discharged. The court then stated that he, Kucera, might be a witness for the People, and also that if it should be desired the appellant might avail himself of Kucera's testimony. Counsel for the People then asked leave of court to reopen the People's case in chief for the purpose of calling the witness Kucera, which request was granted. The court did not then rule on appellant's motion to dismiss, nor was it again pressed until the People had concluded their case, at which time it was denied.

Kucera was then called by the People and stated, among other things, that on the evening in question appellant went in the direction of the warehouse; that he was gone about forty-five minutes; that appellant did not say anything to him or Norman about the purpose of the trip; that appellant said to drive down the street toward the building, which they did; that Norman was driving the car; that when they were about fifty feet from the warehouse they stopped. He further stated that appellant went across the

lot in the direction of the warehouse; that he returned carrying a paper carton of some kind; that it was similar to the cases in the courtroom; that the shape was similar; it was paper; carried six or seven packages to the car; that he did not watch him all of the time; that he made more than one trip; that the packages were placed in the back seat of the car; that they then drove to Vermont Avenue; that Norman took him home; that Frahm did not say anything about what he was going for; that Norman asked him, the witness, to go and take a ride; that appellant did not pay him any money for what he did that night; that the vacant lot was immediately adjoining the warehouse. On cross-examination he testified that Norman unloaded the car; that he did not help and that he did not make any inquiry about the boxes.

George Norman was recalled in rebuttal and denied that anything had been said about Kucera and himself acting as lookouts. He testified also that he did not leave any boxes at Kucera's house.

Appellant offered no evidence nor did he take the witness-stand in his own behalf.

█ The first contention advanced by appellant is that the trial court erred in granting the motion to discharge the defendant Kucera and at the same time denying appellant's motion to be discharged. In other words, appellant contends that the court should not have granted one motion and denied the other. In support of this point he maintains that the evidence as to Kucera's guilt showed a case for the jury; that the testimony which connected Kucera with the crime was the same as that which connected appellant, and that the only testimony connecting the parties was that of Norman. Also that the alleged confession of Kucera bound him more closely to the alleged commission of the crime than it did appellant.

Appellant's contention as to the evidence is untenable for the reason that it appears that the evidence is not the same respecting appellant as it is regarding the defendant Kucera. As a matter of fact, it is much stronger and more convincing as to the participation of appellant in the crime than it is as to the defendant Kucera's part therein. There is a sharp conflict in the evidence as to whether Norman knew that a burglary was being committed; and also,

aside from Kucera's statement, there is nothing to show his connection with the alleged offense.

Appellant stresses the point that the trial court was in error in granting Kucera's motion and at the same time overruling appellant's motion, and also in permitting the People to dismiss as to Kucera and allowing him to be called as their witness. He insists that the resulting vice of such procedure was in effect a statement to the jury that Kucera was not an accomplice. A number of cases are cited to sustain the proposition that proof of the *corpus delicti* of a crime, coupled with a confession of a defendant, is sufficient to sustain a conviction against such defendant. The foregoing proposition is well settled and requires no citation of authorities. Even though a *prima facie* case had been made as to the defendant Kucera's guilt, the trial court must have thought that the evidence was weak and of such an unsatisfactory character that it would not sustain or uphold a conviction. We cannot hold that this belief upon the part of the court was unfounded or that it was an abuse of discretion to discharge the defendant Kucera.

It further appears, however, that the action of the trial court in dismissing as to Kucera was in accordance with well-established principles of law. Section 1099 of the Penal Code provides: "When two or more persons are included in the same charge the court may, at any time before the defendants have gone into their defense, on the application of the district attorney, direct any defendant to be discharged, that he may be a witness for the People." There is also another section even broader in scope and containing more liberal terms than section 1099, which was ostensibly enacted for the furtherance of justice. Such section, 1100 of the Penal Code, states: "When two or more persons are included in the same indictment or information, and the court is of opinion that in regard to a particular defendant there is not sufficient evidence to put him on his defense, it must order him to be discharged before the evidence is closed, that he may be a witness for his codefendant." The words "when two or more persons are included in the same charge," as used in the above section, were construed to mean the same as the words "when two or more persons are included in the same indictment or information," as used in section 1100, *supra* (*Ex parte Stice,* 70

Cal. 51, 56 [11 Pac. 459]). The Supreme Court in *People* v. *Indian Peter,* 48 Cal. 250, 253, determined when such a motion as that allowed by section 1099 could be made.

In *People* v. *Dillon,* 68 Cal. App. 457 [229 Pac. 974], the court held that a motion to dismiss as against a co-defendant is a matter which is in the discretion of the trial court at the motion of the district attorney. In *People* v. *Yeager,* 194 Cal. 452, 488 [229 Pac. 40, 55], our Supreme Court said: ''There is no provision of law or authority in this state that on a joint trial a codefendant is not a competent witness for himself or for his codefendant. He may become an involuntary witness for the People under section 1099, or for his codefendant under section 1100.'' In *People* v. *Bocchio,* 80 Cal. App. 138 [251 Pac. 672], the District Court of Appeal held that it was not error for the trial court to discharge a co-defendant on motion of the district attorney, under section 1099, *supra,* before the defendants had gone into their case, so as to permit a defendant to be a witness for the People. The last four cases cited appear to be similar in their construction of sections 1099 and 1100, *supra.*

In the instant case the defendant had not gone into his case when the court, upon motion of the district attorney, dismissed as to the co-defendant Kucera. It might have been better practice if the trial court had informed the jury of the reason for granting the dismissal, but we cannot hold that such failure was prejudicial error. ▪ And furthermore, if appellant had wanted an instruction upon the matter he should have so requested it. No such instruction was requested. The court fully and fairly charged the jury upon the law appertaining to the facts of the case, and there was no duty incumbent upon it to give instructions upon any matter deemed essential unless so requested by the appellant. (*People* v. *Williams,* 184 Cal. 590 [194 Pac. 1019]; *People* v. *Keyes,* 178 Cal. 794 [175 Pac. 6]; 8 Cal. Jur. 309.) Appellant not having asked for the special instruction, cannot now complain.

▪ Nor can appellant's contention that the action of the court in suggesting that the district attorney dismiss as to Kucera was prejudicial be sustained. The suggestion of the judge was not made in the presence of the jury. Presumptively it was done in the furtherance of justice. ''A trial

judge docs not sit as a mere referee in a contest of wits between counsel in the case, but . . . it is not only within his province, but is his duty, to see that as nearly as possible the issues shall be disposed of on their merits.'' (*Farrar* v. *Farrar,* 41 Cal. App. 452 [182 Pac. 989]; *Bare* v. *Parker,* 51 Cal. App. 106 [196 Pac. 280].) The foregoing rule seems to be just as applicable in a criminal trial as in a civil proceeding. ▪ Conceding that when the court granted Kucera's motion to dismiss a *prima facie* case had been made against him as an accomplice, the court was nevertheless justified, under section 1099, in dismissing as to him. That was a matter wholly within the discretion of the trial court, after proper motion by the district attorney. (*People* v. *Dillon, supra.*) If the court had erroneously granted the motion of Kucera to dismiss, appellant cannot complain of such error unless it is affirmatively shown that he was prejudiced in respect to a substantial right.

Appellant concedes that if it is determined that Kucera is not an accomplice, then and in that case the evidence is amply sufficient to sustain his conviction. On the other hand, he contends that if it is found that Kucera is an accomplice, then there is not sufficient evidence to sustain the jury's verdict of guilty. Before considering this contention it will be well to make a few preliminary observations regarding the underlying principles of law involved herein. Section 1111 of the Penal Code provides: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." ▪ An accomplice has been defined as "an associate in the commission of a crime; a participator in an offense, whether as principal or accessory" (*People* v. *Bunkers,* 2 Cal. App. 197 [84 Pac. 364]). One is an accomplice who knowingly, voluntarily and with common intent with the principal offender unites in the commission of the crime. (*People* v. *Bolanger,* 71 Cal. 17 [11 Pac. 799].) In order that one be held to be an ac-

complice he must be "one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given." (Sec. 1111, *supra.*) It has been held that the mere fact that a witness was jointly indicted with the defendant does not give rise to a conclusive presumption as against the state that he is an accomplice. (*People* v. *Kosta,* 14 Cal. App. 696 [112 Pac. 907, 908].) The court in *People* v. *Kosta, supra,* among other things, said: "The finding of an information against several defendants, and the subsequent dismissal of such information as against one of the defendants for want of evidence, is certainly not an admission, for the purposes of the trial of the remaining defendants, that the defendant dismissed was an accomplice. . . . The district attorney did not admit that either Giannetos or Cochomihos was an accomplice of appellant, and the evidence does not compel the conclusion that either of them was in fact such accomplice. . . . The evidence is ample that neither of these two witnesses had any criminal or guilty connection with the appellant or the offense of which he was found guilty, and about which they gave evidence." The only evidence of Kucera's participation in the crime was his admission, which admission he later repudiated.

 There is yet another reason why Kucera cannot be considered an accomplice. It is a well-settled principle of law that where the facts with respect to the participation of a witness in the crime for which the defendant is on trial are clear and undisputed it is for the court to determine whether he is an accomplice. (*People* v. *Compton,* 123 Cal. 403 [56 Pac. 44]; *People* v. *Sternberg,* 111 Cal. 11 [43 Pac. 201]; *People* v. *Truax,* 30 Cal. App. 471 [158 Pac. 510].) On the other hand, the question of accomplicity is one to be decided by the jury where, although there is evidence tending to connect the witness with the crime, the facts are disputed or susceptible of different inferences. (*People* v. *Coffey,* 161 Cal. 433 [39 L. R. A. (N. S.) 704, 119 Pac. 901]; *People* v. *Compton, supra; People* v. *Creegan,* 121 Cal. 554 [53 Pac. 1082]; *People* v. *Truax, supra; People* v. *Bunkers, supra.*) From the verdict rendered it must be assumed that the jury found not only that the witness Kucera was not an accomplice, but that he also was innocent of any wrongdoing. It is clear from the evi-

dence before us how it was possible for the jury to have found that Kucera did not knowingly and with criminal intent aid, abet, assist or participate in the criminal act. And furthermore, it is clear that the jury could have determined from the evidence that even though Kucera might incidentally have assisted appellant, yet he did not know a crime was being committed or that the same was a criminal act in which he was assisting. And we may safely assume from the verdict of the jury finding appellant guilty that they in effect determined that Norman was not an accomplice. ▇ It is elementary that the conclusion of the jury as to whether a person is or is not an accomplice, when supported by proper evidence, is conclusive and cannot be disturbed upon appeal. (*People* v. *Coffey, supra.*) ▇ Even though the jury did not reach this conclusion, the verdict is nevertheless supported by other evidence, both oral and circumstantial, which tended to prove that the appellant committed the crime as charged.

In view of what we have said, it becomes unnecessary to discuss appellant's point that there cannot be a conviction upon the uncorroborated evidence of an accomplice. We concede that many of the cases cited by appellant contain correct statements of the law of accomplicity, but they are beside the point for the reason that the jury by their verdict have determined that Kucera, and perhaps Norman, was not an accomplice, which finding has not been and will not be disturbed by this court.

▇ We are in accord with appellant's contention that the mere unexplained possession of recently stolen property by the defendant, standing alone, is not sufficient to justify his conviction for burglary. But the fact of possession of the recently stolen property unexplained is a circumstance tending to show guilt when coupled with suspicious circumstances. (*People* v. *Nichols*, 39 Cal. App. 29 [177 Pac. 861]; *People* v. *Lang*, 142 Cal. 482 [76 Pac. 232]; *People* v. *Getty*, 49 Cal. 581.) The trial court fully and correctly instructed the jury upon the law pertaining to the possession of stolen property; and, furthermore, there was sufficient evidence aside from the possession of the stolen property to sustain the finding of the jury.

▇ Appellant's next point is that the nails found in his possession and sold by him in October and November of 1929 were not identified as the nails that were taken from

the warehouse. Irrespective of whether the identity of the nails must be established aside from the evidence introduced, it is clear that such identification was adequately proved. As pointed out, several of the People's witnesses testified that the boxes or cartons containing the nails were similar to the ones in the warehouse. It has been held that evidence of similarity is sufficient. (*Langford* v. *People,* 134 Ill. 444 [25 N. E. 1009] ; *State* v. *Babb,* 76 Mo. 501; *Gravely* v. *Commonwealth,* 86 Va. 396 [10 S. E. 431]; *State* v. *Mallahan,* 66 Wash. 21 [118 Pac. 898].)

Appellant contends that the sales of the nails on the two occasions were so remote from the time of the burglary that they should not have been admitted in evidence. The fact that the property was unquestionably identified concludes the point as to remoteness.

Six hypotheses are submitted to this court upon which the jury might have acquitted appellant. It is unnecessary to here repeat any of them, as we assume that each was fully argued to the jury. The rule is well settled that appellate tribunals are not authorized to reverse a judgment of conviction because the testimony is susceptible of two reasonable inferences, one looking to the guilt of the defendant and the other to his innocence. (8 Cal. Jur. 587, 588.) In *People* v. *Martinez,* 20 Cal. App. 343 [128 Pac. 952, 953], the court said: ''Where the circumstances are such as to reasonably justify an inference of guilt, as found by the jury, the fact that an inference of innocence might likewise be reasonably drawn therefrom does not present a question of law for review by an appellate court any more than does a verdict based upon direct conflicting evidence. . . . It is only where the evidence obviously does not warrant the inference of guilt that the court will interfere.'' In *People* v. *Mitsunaga,* 91 Cal. App. 298 [266 Pac. 1020] ; *People* v. *Ross,* 89 Cal. App. 132 [264 Pac. 314] ; *People* v. *Lyons,* 80 Cal. App. 257 [251 Pac. 648] ; *People* v. *Lawler,* 79 Cal. App. 207 [249 Pac. 18], our appellate courts have passed upon this well-settled principle of law. We have carefully read the evidence in the instant case and are satisfied that it is quite sufficient to support the verdict.

Judgment and order denying motion for a new trial are affirmed.

Works, P. J., and Craig, J., concurred.