[Crim. No. 454. Third Appellate District.—December 2, 1918.]

## THE PEOPLE, Respondent, v. D. C. NICHOLS, Appellant.

CRIMINAL LAW — BURGLARY — POSSESSION OF STOLEN PROPERTY—INSTRUCTION.—An instruction that where goods have been feloniously taken by means of a burglary, and either immediately or soon after are found in the possession of a person who gives a false account, or refuses to give any account, of the manner in which he came into the possession, proof of such possession and guilty conduct is presumptive evidence not only that he stole the goods, but that he made use of the means by which access to them was obtained, does not contain a correct statement of any rule of law as appli-

cable to criminal cases, and in a prosecution for burglary is prejudicially erroneous where there is only slight evidence of the guilt of the defendant.

ID.—PRESUMPTION OF GUILT FROM POSSESSION.—Evidence of the recent unexplained possession of stolen property, standing alone, is not sufficient to justify a verdict of guilty, even in the case of larceny, and the court is not justified in intimating to the jury that a definite presumption of guilt could arise upon such state of facts.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial, D. M. Young, Judge. Reversed.

The facts are stated in the opinion of the court.

Joseph H. Tam, Walter F. Lynch and Frank A. Henning for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was, by information filed by the district attorney of San Joaquin County, in the superior court thereof, jointly charged with one John Wilson with the crime of burglary. Against him, as was likewise done as to his codefendant, a prior conviction of burglary was charged in said information. Upon his arraignment he admitted the prior conviction charged in the information, and pleaded not guilty to the crime for which he was informed against. Upon a trial of the charge he was convicted, and it is from the judgment of conviction and the order denying his motion for a new trial that these appeals are prosecuted.

Two points for a reversal are made, viz.: 1. That the evidence does not support the verdict; 2. That the court erred to the prejudice of the accused in one of its instructions.

The crime charged was committed in the city of Stockton, at between 7 and 8 o'clock of the evening of February 26, 1918. The house alleged to have been burglariously entered was, at the time of the commission of the crime, occupied by one W. L. Walker and wife. There were taken from one of the rooms of the house a suit of underclothes, five or six shirts, a finger ring, a watch, a bracelet and some cigars.

It appears that Bernard Phelan, a special agent or officer of the Southern Pacific Company at Stockton, left that city on the night of February 26th, taking the 11:15 P. M. train, and went to the town of Tracy, a railroad town situated a few miles south of Stockton. Upon the stopping of said train at Tracy, the officer observed the defendant and his codefendant, Wilson, in the act of leaving the "gondola car," attached to the said train. Wilson was carrying a valise or suitcase, and the defendant was carrying no packages of any kind. Phelan took the two men to the baggage-room of the railroad station and questioned them as to where they came from, etc. The defendant said that he came from Stockton on the train referred to and that he and his companion, Wilson, met for the first time on said train. Phelan, assisted by another railroad officer, who was present when the two men were taken charge of, opened and examined the valise and therein found a suit of clothes, a pair of pantaloons, and several boxes of cigars. The two men were then taken to Stockton by Phelan and there lodged in the county jail.

One Solomon Silver, a pawnbroker and second-hand dealer in the city of Stockton, testified that on the night of the burglary and within a very brief time after the crime was shown to have been committed, a party came into his place of business, and, giving the name of Brown, offered for sale a watch and a finger ring, which were identified by Walker, the owner, as among the articles taken from his house by the party or parties entering it. Silver bought the watch and the ring, and his son, who was present at the pawnshop at the time of the transaction, made a memorandum in a book kept by Silver for that purpose, of the transaction and inserted in said book a general description of the seller and the clothes that he then wore. Said Silver further testified that he was quite certain that Nichols was the party who sold him the watch and the ring. Silver's son was not so certain that Nichols was the man.

The defendant testified that he had nothing whatever to do with the commission of the burglary and positively denied that he sold the watch and the ring to Silver. Nichols further testified that at Stockton he took the train from which he was seen to leave by officer Phelan at Tracy; that he had never before met his codefendant, Wilson, until the latter

boarded the "gondola car," in which he was riding, at Lathrop, a station situated between Stockton and Tracy.

Wilson, Nichols' codefendant, admitted that he committed the burglary and took from Walker's house a number of articles, among which were the watch and the ring referred to, but positively declared that Nichols had absolutely nothing to do with the burglary and was not the man who sold the watch and the ring to Silver. Wilson further testified, corroborating Nichols, that the latter and he had never before met until he (Wilson) boarded the "gondola car" at Lathrop. Wilson also testified that within less than an hour after he entered Walker's house and took therefrom a number of articles, he met on one of the streets of Stockton a man with whom he had previously become acquainted and known to him as "Brownie"; that, on meeting "Brownie," he requested him to take the watch and the ring to some pawnshop and sell them; that "Brownie" did take the watch and the ring to Silver's pawnshop and there disposed of those articles. This man "Brownie" was not produced as a witness at the trial of the defendant. In this connection it may be added that a few days after his arrest, Wilson stated to the assistant district attorney, in the presence and hearing of others, that it was he who sold Silver the watch and the ring.

The above is a statement in substance of all the evidence that was brought before the jury by both the prosecution and the defense. We would not say as a matter of law that the evidence does not afford sufficient support to the verdict, but we are required to say that that presented by the people in support of the theory of the guilt of the defendant is by no means overwhelming, or of so convincing a character, in proof of the defendant's connection with the crime charged, as to compel a reviewing court to say that no other verdict under the evidence could reasonably have been returned. The whole case of the people, it will be noted, practically rests upon the identification by the witness, Solomon Silver, of the defendant as the party who sold him the watch and the ring, and Silver's testimony does not appear to be altogether satisfactory. Of course, there were the other circumstances, viz.: That the defendant was in Stockton when the burglary was committed and that he was found in the company of Wilson, who admitted responsibility for the crime; yet it is manifest that these circumstances acquire their evidentiary importance

largely from Solomon Silver's identification of the defendant as the man who sold him the articles mentioned and would not, taken alone, be regarded as of sufficient force to justify the conviction of the defendant of complicity in the crime.

Thus we have reviewed the evidentiary features of the case, not because we think that there is not enough in the evidence to support the verdict, but because of an instruction which the court incorporated into its charge to the jury, and to which the defendant here makes the objection that it not only involves an erroneous statement of the law, but that it was highly prejudicial to the accused. The instruction thus reads:

"The court instructs you that where goods have been feloniously taken by means of a burglary, and either immediately or soon after are found in the possession of a person who gives a false account, or refuses to give any account, of the manner in which he came into the possession, proof of such possession and guilty conduct is presumptive evidence not only that he stole the goods, but that he made use of the means by which access to them was obtained."

There can hardly be any doubt that the instruction does not contain a correct statement of any rule of law as applicable to criminal cases, and there can be no less reason for doubting that, in view of the slight evidence of the defendant's guilt of the crime of which he stands convicted, the instruction must have operated prejudicially against the accused in the minds of the jury.

If, by said instruction, the court intended to declare, as reasonably the instruction may be interpreted to mean, that the law is that the unexplained possession of goods shown to have been stolen from a building burglariously entered for that purpose is conclusive evidence of the guilt of the defendant of the crime of burglary, or that he is guilty of having stolen the goods, then clearly it is obnoxious to the objection that it involves an instruction upon questions of fact and is consequently an invasion of the constitutional function of the jury and to the further objection that there is no such presumption of law. If, however, this was not the purpose of the instruction, or, assuming that it could not be so construed as to convey such a meaning, still it is plainly subject to the objection that it involves the statement, or at least tends to convey the notion, that the presumption of guilt arising from

the unexplained possession of stolen goods is sufficiently satisfactory as in proof of guilt to cast the burden of proving his innocence upon the accused. Of course, that is not the law. It is not true, as a legal proposition, nor does it necessarily follow as a matter of fact, that a party who, shortly after the crime is committed, is found in the possession of stolen goods, obtained by someone by means of burglary, and fails or refuses to give a satisfactory account of such possession, committed the burglary or even obtained the goods dishonestly. As far as the law has ever gone, or can logically go, with respect to the fact of the possession of stolen goods by a person accused of the stealing of such goods is that the fact of such possession, unexplained, is evidence which it is proper for the jury to consider in determining the question of the guilt or innocence of the accused. In other words, such possession, unexplained, merely affords, if anything at all, a very remote inference of guilt, and whether such inference may acquire any probative significance or evidentiary value in the establishment of the guilt of the accused must depend upon the character or nature of other incriminatory circumstances, if any be shown. At any rate, as above stated, and as the supreme court declared in *People* v. *Boxer*, 137 Cal. 563, 564, [70 Pac. 671], ''evidence of the recent unexplained possession of stolen property, standing alone, is not sufficient to justify a verdict of guilty, even in a case of larceny, and the court is not justified in intimating to the jury that a 'definite presumption of guilt' could arise upon any such state of facts.''

It may be added that the instruction is vulnerable in another view, and that is that there is no evidence to which it is applicable. The only evidence in the record that the defendant ever had possession of the watch and the ring is that which was brought in through the testimony of the pawnbroker. There is no testimony that the pawnbroker asked the defendant how he obtained the articles or from whom he obtained them, assuming that the defendant was the party who sold them to the pawnbroker. After his arrest, the defendant at all times not only denied complicity in the burglary, but denied that it was he who sold the watch and the ring to the pawnbroker. His position, therefore, was such that there was no occasion for him to account for the possession of the property or to refuse to do so. There was, in short, no explanation for him to make with reference to the articles. If he was

the party who took the articles to the pawnbroker, and the latter had asked him where and how he came into their possession, and he had either refused to explain or was shown to have given a false account of how he obtained possession of the property; or, if he had been apprehended by an officer or the owner of the property with the articles in his possession and had refused to explain his possession or given an untruthful statement thereof, then, in either event, we would have a case where a properly framed instruction as to the unexplained possession of stolen property would have been pertinent. But no such a situation as is covered by either of the supposititious cases is presented here.

The court's charge was otherwise a correct and fair statement of the principles applicable to the case as it was disclosed by the proofs, and if the evidence of guilt had been so clearly shown as to warrant the conclusion that no other verdict but that of guilty could justly have been found and returned, it is very probable that the erroneous instruction above considered could well be declared to have been innocuous in its effect upon the substantial rights of the accused. But, as stated, we cannot, in view of the very slight proof of guilt made against the accused, see how we may justify ourselves in saying that the instruction did not result in preventing a fair and impartial consideration of the case by the jury.

The judgment and the order appealed from are, therefore, reversed and the cause remanded.

Chipman, P. J., and Burnett, J., concurred.