[Crim. No. 12. Fourth Appellate District.—January 24, 1930.]

THE PEOPLE, Respondent, v. CLAUDE BRASWELL, Appellant.

Fred Duffy for Appellant.

U. S. Webb, Attorney-General, and John D. Richer, Deputy Attorney-General, for Respondent.

BARNARD, J.—The defendant was charged in an information filed by the district attorney of San Bernardino County with the crime of burglary in six separate counts. He was also charged with fifteen prior convictions of a fel-

ony. He entered a plea of "not guilty" and "not guilty by reason of insanity" as to each count of the information, and also denied all of the alleged prior convictions.

After a trial by jury defendant was found guilty of the crime of burglary as charged in counts one and five of the information and the jury also found he had suffered prior convictions in Anderson County, Texas, in the following three cases: Criminal 9828, Criminal 9831 and Criminal 9834. The remaining prior alleged convictions were found to be not true. Defendant was later tried by the same jury on the issue of sanity and was found to be sane at the time the offenses were committed.

In brief, the evidence with reference to the first count of the information, is as follows: Mrs. A. B. Burcky testified that she lived at 1754 Second Avenue, Ontario, California, and that about 2 or 2:30 on the morning of February 18, 1929, someone entered and burglarized her home; that the back door of her home was left standing open; that her son's trousers were taken from his room and left lying on the floor, together with her daughter's purse, which was lying on the floor empty. Her son testified that he was awakened by revolver shots and shortly thereafter the police officers came to the door; that his trousers had been taken from the side of his bed into the next room and $7.60 removed therefrom; that $1.50 was taken from his sister's purse. A police officer, J. L. Lock, testified that shortly after 2 o'clock that morning he and another officer were called to the Burcky home; that he saw the flash of a flashlight, apparently in the house, and as he walked toward the back door the flashlight quit operating; that as he went on around the house and was near the back door, the flashlight continued to operate in quick, short flashes, going from the front part of the house to the rear, whereupon the defendant came out of the door. When commanded to put up his hands, the defendant ran. Several shots were fired, but the officer overtook defendant and placed him under arrest. The officer then testified:

"After I pursued him and caught him Officer Fred Tebo also came along and we took Braswell into custody and returned to the police station and there searched him. At the time we took him in custody we found $7 in one dollar bills in his left hand and his flashlight in his right hand. We

searched for a gun and we found none, but found an ice pick. We then returned to the police station and searched him further and found a purse with approximately $56, and I believe mostly in paper money in his pants pocket, and after he was searched took him to the hospital for first aid.''

This officer further testified that appellant's purse had two compartments; in one of these there was a roll of currency amounting to $54, and in the other there were two $1 bills. The $54 consisted of one $20 bill, one $10 bill, four $5 bills and four $1 bills. In appellant's pants pocket was found two half-dollars, six dimes, two quarters, seven nickels and two pennies, also a knife and a pass-key. When arrested the appellant had two pairs of socks pulled on over his shoes. This evidence was sufficient to sustain the verdict of the jury as to appellant's connection with the offense charged in the first count.

■ It is urged that the evidence is not sufficient to establish appellant's connection with the offense charged in count five of the information. In reference to that count, one John Batchelor testified that he lived at 1753 Second Avenue, Ontario, California, directly across the street from the Burcky home, heretofore mentioned; that he was awakened about 2 o'clock on the morning of February 18th by several shots; that he found the outside door of his house standing open, whereas it had been closed, but not locked, when he retired the night before; that a purse containing $54 in currency had been taken from his trousers, which were lying on his bed when he retired the previous evening; that the same purse was found the next morning on the adjoining lot, about 20 feet from his house, minus the money. He testified that the $54 consisted of four $1 bills, four $5 bills, one $10 bill and one $20 bill, which was a new crisp bill. He stated that the $54 found on the appellant looked like his money. The chief of police testified as follows, with regard to a voluntary conversation he had with appellant:

''Officer Lock and myself brought him over and he talked all the way over on various subjects; talked about being wanted in Texas and about wanting his property, that part that we had out there, and among other things was a fountain pen, and his part of this money, and whatever part that was not 'hot' he wanted; he said he could use it in his business and all that kind of stuff and he told at that time

about being a reward offered for him in Texas; he said it was '25.' I asked him '2500 dollars' and he said 'no, he wasn't worth that much; it was only $25.' "

■ It must be conceded that the mere unexplained possession of stolen property is not sufficient to establish the crime of burglary. (*People* v. *Nichols*, 39 Cal. App. 29 [177 Pac. 861].) However, the fact of such possession, if unexplained, may be taken into consideration by the jury, together with other circumstances, in arriving at a verdict. (*People* v. *Reed*, 58 Cal. App. 7 [207 Pac. 1025]; *People* v. *McNamara*, 65 Cal. App. 521 [224 Pac. 476]; *People* v. *Cronevitch*, 86 Cal. App. 646 [261 Pac. 309].) We have here, not only the unexplained and uncontradicted possession of the stolen money, but also the following facts: The property had been taken from Batchelor's clothes while they were lying on his bed, under such circumstances of stealth that no one in the house was awakened. The door of his house was left open; the pocketbook in which the money had been contained was thrown away; and a similar amount of money in a similar form, and bearing a very close resemblance, was found in a separate compartment in a pocketbook carried by defendant. He was actually apprehended immediately across the street, where he was engaged in an enterprise exactly similar to the one that had taken place in the Batchelor home. He was at the time fully equipped for such an expedition of stealth, having on two pairs of socks over his shoes, and also having a flashlight, an ice-pick and a pass-key. He also admitted that a part of the money was "hot." While the evidence as to the entry of the appellant into the Batchelor home is circumstantial, we think these facts constitute ample evidence to support the verdict of the jury.

■ It is next contended that the evidence is not sufficient to sustain the finding of the jury, that appellant had theretofore been three times convicted of a felony. This contention is based upon the claim that the identification of the defendant, as the party who had been convicted on the former occasions, in Texas, was not sufficient. Duly authenticated copies of the judgment of conviction of the crime of burglary, in each of the three cases in Texas, were introduced in evidence. The sheriff of Anderson County, Texas, testified that he knew appellant and had placed him under

arrest in the latter part of 1919, and that appellant was the same man that was tried in each of the three cases in question. ██ In reference to the three prior convictions in Texas, the sheriff made the following answer to the following questions.

"By Mr. Thompson: Q. Calling your attention first to the authenticated copy of conviction, judgment of conviction, in the case of the *State of Texas* v. *Claude Braswell*, 9831, tried on January 14, 1920, at which time John W. Normington was foreman of the jury, do you know if this Claude Braswell is the defendant now in court here that is named in that? A. Yes, sir, he is the same party.

"By Mr. Thompson: Q. Now, calling your attention to People's Exhibit 10, which is also an authenticated copy of judgment of Conviction in the case of the *State of Texas* v. *Claude Braswell* No. 9828, bearing date of January 14, 1920, at which time John W. Normington was the foreman on the trial jury, do you know if this man is the same Claude Braswell as was tried at that court at that time? A. It is.

"Q. Directing your attention now to People's Exhibit 12, which is an authenticated copy of the judgment, record of judgment of conviction in the *State of Texas* v. *Claude Braswell* in the county of Anderson, in cause number 9834, January 14, 1920, at which time John W. Normington was the foreman of that jury trying Claude Braswell named therein, do you know if the Claude Braswell named in this certificate is the same person as is here now on trial? A. Yes, sir, he is the same party."

Appellant insists that these questions called for hearsay testimony. This contention is without merit. The question called for the knowledge of the witness, as to whether he knew appellant to be the same man named in the record of conviction. The question called for the knowledge of the witness, as to a fact, and the witness testified, as a fact, that he knew appellant to be the same man. Appellant had ample opportunity to cross-examine the witness as to the basis of his knowledge, but the record shows no attempt to do so. There was sufficient evidence to justify the finding of the jury, that the defendant was the same man involved in the prior convictions.

██ Appellant's next contention is that the court erred in placing defendant upon trial at all, for the reason that a

man cannot be tried or punished for a public offense while he is insane. (Pen. Code, sec. 1367.) Defendant offered in evidence an authenticated copy of a judgment of the County Court of Walker County, Texas, adjudging the defendant insane, under date of November 7, 1927. It is insisted that this judgment should be considered in full force and effect, and that it is sufficient to prevent the defendant being placed on trial. This contention is also without merit. So far as insanity is concerned, the only question before the trial court was whether appellant was sane at the time of the commission of the offenses charged in the information, and the question of his insanity at that time was a question of fact to be determined by the jury. The record of the Texas court adjudging defendant to be insane on November 7, 1927, was admitted in evidence for whatever effect it might have upon the question of defendant's insanity at the time the offense here involved was committed. The jury found that the other evidence introduced was sufficient to establish the sanity of the defendant at the time involved, and their decision is controlling. The question as to whether the defendant was insane at the time of the commission of the offense charged was properly submitted to the jury. (*People* v. *Schuler*, 87 Cal. App. 68 [261 Pac. 1059].) There being conflicting evidence, the finding of the jury cannot be disturbed on appeal.

 It is finally contended by appellant that, even if he were properly found guilty of three prior convictions in the state of Texas, that since the record shows that these convictions all occurred on the same day, to wit, January 14, 1920, and in the same court, they did not constitute three prior convictions, within the meaning of section 644 of the Penal Code. It is argued that the intent and purpose of section 644 of the Penal Code is to provide that where a defendant has been apprehended, convicted and punished, he shall be given an opportunity for reformation, and that after this has occurred three separate times, upon a fourth conviction he shall be deprived of his liberty for life. It is argued that the three prior convictions in this case are, in effect, one conviction only, and should be so considered for the purposes of this statute. It may be conceded that this argument might, with considerable force, be addressed to a law-making authority. There might be good reason for

providing that an interval, for punishment and for reformation, should take place between respective convictions before regarding a reformation as hopeless. There might also be good reason for providing a different rule where the prior offenses were committed all on one day, possibly under peculiar stress of circumstances, and where the respective offenses were committed on different occasions. The record here does not disclose whether the offenses involved in the prior convictions were committed on the same day, or over a period of time. The record does not show whether the cases were tried separately or together. The record discloses that each case had an individual number, that each of the verdicts were, on the same date, signed by the same man, as foreman of the jury.

Prior to the amendment of 1927, section 644 of the Penal Code read as follows:

"Third conviction. Penalty. Every person convicted in this state of any felony who shall previously have been twice convicted, whether in this state or elsewhere, of the crime of robbery, burglary, rape with force and violence, arson or any of them, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in the state penitentiary for not less than ten years.

"Fourth conviction. Penalty. Every person convicted in this state of any felony who shall previously have been three times convicted, whether in this state or elsewhere of the crime of robbery, burglary, rape with force and violence, arson or any of them, shall be punished by imprisonment in the state penitentiary for not less than life; provided, however, that nothing in this act shall abrogate or effect the punishment of death, in any and all crimes now or hereafter inflicting such punishment of death."

In that year (Stats. 1927, p. 1066) the section was amended to read as follows:

"Every person convicted in this state of any felony, who shall have been previously twice convicted *upon charges separately brought and tried,* either in this state or elsewhere, of the crime of robbery, burglary, burglary with explosive, rape with force or violence, arson, murder, assault with intent to commit murder, grand theft, bribery of a public official, perjury, subornation of perjury, train wrecking, feloniously receiving stolen goods, felonious as-

sault with a deadly weapon, or any of them, shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life and shall not be eligible for release on parole until he shall have served a minimum of at least twelve years. Every person convicted in this state of any felony who shall have been previously *three times convicted, either in this state or elsewhere, of any felony,* shall be punished by imprisonment in the state prison for not less than life and shall not be eligible to parole. Nothing in this act shall abrogate or effect the punishment by death in any and all crimes now or hereafter inflicting such punishment of death." (Italics ours.)

The first part of this statute provides that every person convicted of any felony, who has been previously twice convicted, where the charges have been separately brought and tried, either in this state or elsewhere, of certain crimes, shall receive life imprisonment, and shall not be paroled for at least twelve years. The second part of the statute provides that every person convicted of any felony, who has been previously three times convicted, either in this state or elsewhere, of *any* felony, shall be given life imprisonment, and shall not be eligible to parole. The second part of the statute leaves out the provision contained in the first part (and placed there for the first time by the amendment of 1927), providing that the prior charges must have been separately brought and tried, and also makes the prior convictions applicable to any felony, instead of the particular ones mentioned in the first portion of the statute. It may be argued with some force that the legislature should not have required the prior convictions to be upon charges separately brought and tried, when the limit upon parole is fixed at only twelve years, and have left that provision out where the defendant is never to be eligible to parole. In other words, that more is thus required in laying the foundation for a twelve-year term than is required for a life term. While that argument might well be addressed to a legislative body, it is not controlling upon the judicial interpretation of the statute in question. In order to adopt appellant's contention, it would be necessary to add the words "upon charges separately brought and tried" to the second part of the statute. This might be done if there were any ambiguity about the second part of the statute, if

it was incomplete, or if it had been left in such condition as to disclose that it was the intention of the legislature to merely add one more to the list of prior convictions, leaving all of the other provisions of the first part of the section intact, and then fix an additional punishment therefor.

Section 1858 of the Code of Civil Procedure reads as follows:

"Construction of Statutes and Instruments, General Rule. In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all."

It will be noted that the second portion of the statute is complete in itself. It does not adopt or refer back to the preceding portion of the paragraph, but states in full its own conditions. It makes two distinct changes, leaving out the reference to a separate bringing and trying of the prior charges, and changing its application from certain named felonies to any felony. Under the rule of construction laid down by section 1858 of the Code of Civil Procedure, it is not for the courts to insert in the second portion of the section such a provision as is contained in the first portion. It is entirely possible to give effect to each portion of the statute. The legislature may have considered three prior convictions to have been sufficient to have constituted a man an habitual criminal, whether or not they were upon charges separately brought and tried.

For the reasons given, the judgment appealed from is affirmed.

Sloane, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 5, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 20, 1930.

All the Justices present concurred.