[Crim. No. 2751. First Dist., Div. Two. May 16, 1952.]

THE PEOPLE, Respondent, v. DAVID FRED
MONTEVERDE, Appellant.

Alfred J. Hennessy and Walter F. Lynch for Appellant.

Edmund G. Brown, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

GOODELL, J.—This appeal was taken from a judgment of conviction on three counts of burglary fixed by the verdicts as second degree, and from an order denying a new trial. Appellant admitted a prior burglary conviction in 1947 as alleged in the information, on which he served a term of imprisonment. In the instant case he was sentenced to the penitentiary.

All three burglaries were of homes in the Piedmont Pines District in Oakland, in the daytime, while the occupants were absent.

The first burglary was on March 16, 1950, at the Davidson home where the articles taken were a Keystone movie camera, another camera, a revolver, some jewelry and a six-piece silver tea set engraved "R." The second was on April 26, 1950, at the Erickson home, where the articles taken were a television set, jewelry, a fur coat, and a wallet containing money. The third was on May 13, 1950, at the Smith home, where the articles taken were a Gruen wrist watch, two other watches, a ring, a silver bracelet, a camera and $7.00 in pennies.

Mrs. Davidson, Mrs. Erickson and Mr. and Mrs. Smith testified that on returning to their respective homes they found definite evidence of a breaking and entry and the theft of the articles named.

Appellant presents ten or more contentions on this appeal, all of which revolve around accomplice evidence and instructions respecting it.

Appellant lived in Merced and living there also were two young men named Paul Leus and Clifford Bass, each of whom took part in two of the three burglaries. They testified for the prosecution, and the court instructed the jury as a matter of law that they were accomplices of appellant.

After each burglary the stolen property was taken immediately to San Francisco where it was sold to one Ralph Mayer who also testified for the prosecution, and the court instructed as a matter of law that he was *not* an accomplice.

About three months after the last burglary Mayer was apprehended in Portland, Oregon, brought back to San Francisco and charged with receiving stolen property. He pleaded guilty and was fined $500 and given a suspended penitentiary sentence, with one year in the county jail and three years' probation. He had taken to Portland some of the property stolen from the three homes and at the trial the television set, the silver tea set, a bracelet, the Gruen wrist watch and the movie camera were in court and identified by the respective owners. He testified that he had bought all of it from appellant.

*The Davidson burglary*: Bass testified that he and appellant set out for Oakland from Merced in a green 1935 Oldsmobile sedan, with the avowed purpose of burglary; that they entered the house by the back door and took a tea set and camera (both of which he identified) and an old revolver; that appellant later made a telephone call from Oakland and then drove over to Mayer's house in San Francisco where appellant introduced Bass to Mayer; the property was looked over by Mayer and unloaded in his garage; they then returned to Merced.

*The Erickson burglary*: Bass also testified that three weeks or a month later he made another trip with appellant from Merced to Oakland in the same car and for the same purpose, this time accompanied by Leus; Leus knocked on the door and there was no answer; Bass drove the car down the hill and in 10 or 15 minutes appellant came out carrying the television set (which Bass identified) with a fur coat over it; they then drove over to Mayer's place as before, where the property was unloaded and sold for from $75 to $100 and the money divided; they "came out with about $30 a piece."

Leus testified that he lived next door to appellant in Merced, and he, Bass and appellant, set out from there for Oakland in a green '35 or '36 Oldsmobile sedan to burglarize a house; he and appellant entered by the lower door; Bass took the car down the hill a short distance; he testified that they took out a television set (which he identified) and some furs and took the property over to Mayer's house where it was sold, and they then returned to Merced.

Leus testified that he made another trip with appellant from Merced to Oakland for the same purpose but in a blue '47 Buick convertible and this time one Jack Key was with them; that they stopped in front of a house and Key stayed in the car. This, we assume, was the Smith home although Leus did not testify as to what was taken. In fact he expressed a doubt as to whether the house was actually entered. Leus testified that they then went over to San Francisco and returned to Merced the next day.

*The Smith burglary*: Harold I. Smith testified that he left his home on Wilton Drive about 2 o'clock on Saturday, May 13, to get some rock for a terrace he was building, and on returning about 30 minutes later a faded royal blue Buick or Oldsmobile convertible was in front of his home. A young man was in it who said they had run out of gas and his friends had gone to get some. Smith entered the house and got something to eat. His wife returned about 3 and found the bedroom in disarray; dresser drawers were open; a box which had contained money was empty; two pocket watches, a Gruen wrist watch, a ring, a bracelet and a camera were missing. He identified the wrist watch engraved "Elizabeth" as his wife's. Mrs. Elizabeth Smith testified that on her return about 2:30 or 3 p. m. she found things missing, among them her Gruen wrist watch, which she identified in court by her name engraved thereon and by a nick on the watch. Mayer when shown the watch testified that he had bought it in San Francisco from defendant. Although Leus did not testify as to an entry here, he did testify that appellant had said "Let's get out of here" when a car drove up in front of the house.

Appellant took the stand and denied any connection with the burglaries or the stolen property. He admitted having known Mayer for from 8 to 10 years and that he had introduced Bass and Leus to him, but this, he explained, was in January, 1950, when he called on Mayer, accompanied by both boys, with respect to a Saint Bernard pup which Mayer

had promised him. He admitted also that on May 13 (which was the day of the Smith burglary), he was in San Francisco and driving Jack Key's blue Buick convertible. The evidence shows that on that day he was tagged in San Francisco for going through a red traffic signal.

Appellant's first point is that there was prejudicial error in instructing that "If the crime of burglary . . . was committed by anyone, . . . then under the evidence in this case and as a matter of law the witness Ralph Mayer was not an accomplice, and the rule requiring corroboration does not apply to the testimony of that witness."

Appellant relies on *People* v. *Lima,* 25 Cal.2d 573 [154 P.2d 698], where the defendant was convicted of receiving stolen property on the testimony of the thieves, and the question presented was whether they were his accomplices. The evidence showed that in the early part of the olive season Lima had "agreed to buy all the stolen olives the witness and Larkin could bring in." In the case at bar the stolen property was sold to Mayer, but appellant points to no evidence whatever of any understanding or agreement in advance of the burglaries that he would buy any of it, and we find none. The general rule, restated in the Lima case (p. 576), "that the thief and the receiver of stolen property are not accomplices" fully justified the instruction that Mayer was not an accomplice.

Appellant's second point, which is that there was prejudicial error in not submitting to the jury, *sua sponte,* the question whether or not Mayer was an accomplice, has just been answered. Under this head appellant quotes Mayer's testimony at great length. He identified the stolen property, piece by piece; said that Monteverde had sold all of it to him; that he had resold the television set in San Francisco and moved the rest of it to Portland, and that he had met Leus and Bass several times with Monteverde. His recollection was that the first time he met Bass was when Monteverde sold the tea set and camera (which would be on or about March 16, 1950). However, appellant does not specify how or why the evidence was, as counsel now claim, susceptible of different inferences as to Mayer's "complicity in advising and encouraging the commission of the burglaries." We find no evidence in the record from which such inference could be drawn. Since appellant did not request such an

instruction he apparently did not consider there was any evidence to warrant it.

Appellant's third point is that there was error in not instructing, *sua sponte*, that a person is an accomplice although not present. If Mayer had made no agreement in advance to buy the stolen goods he was not an accomplice, and there would be no point at all in injecting into the instructions the abstract question of presence at, or absence from, the scene of the burglary. The jurors would have wondered what it meant and how it was supposed to apply, and it probably would have confused them.

Appellant's fourth point is that there was prejudicial error in giving conflicting instructions as to the requirement that the testimony of an accomplice must be corroborated and that, therefore, it cannot be determined which one was followed. The court instructed that ''In determining whether or not the testimony of an accomplice has been corroborated as required by law, you must, . . . assume to be removed from the case the testimony of the accomplice, and then examine all other evidence with a view of determining if there be any inculpatory evidence, that is, evidence tending to connect the defendant with the commission of any offense. If such other evidence does do that, then the testimony of the accomplice is corroborated. If it does not, then there is no corroboration, although the accomplice may be corroborated in regard to any number of facts sworn to by him.''

It is said that it conflicted with the following: ''If the crime of burglary . . . was committed by anyone, then . . . the witnesses Paul Leus and Clifton Bass were accomplices . . . then . . . the witness Ralph Mayer was not an accomplice, and the rule requiring corroboration does not apply to the testimony of that witness.''

There is no conflict since they deal with different subjects. The one last quoted was limited to telling the jury outright, as a matter of law, that Leus and Bass were accomplices; that Mayer was not, and that his testimony required no corroboration. The one first quoted was confined to giving the jury a process for determining whether the testimony of Leus and Bass was corroborated, by removing their testimony for the purposes of the test, and then looking at all the other evidence to see if it connected the defendant with the crime. One told the jury precisely who

were accomplices, the other told the jury how to test the corroboration.

Appellant's fifth point is that the court erred in failing to give the jury, *sua sponte,* the code definition of corroborative evidence. Beyond stating the point, appellant does nothing to develop or elaborate it except to quote the definition itself as found in section 1839, Code of Civil Procedure.

"As provided by the Code of Civil Procedure, 'Cumulative evidence is additional evidence of the *same character,* to the same point,' while 'Corroborative evidence is additional evidence of a *different character,* to the same point.'" (10 Cal. Jur. p. 690; italics added.) Admittedly, the statutory definition was not given in so many words, and the question is whether by some other means the jury was substantially informed as to the meaning of corroborative evidence. We are satisfied that this was done.

In instructing on stolen property the court said: "In addition to *proof of possession* of such property, there must be proof of corroborating circumstances tending of themselves to establish guilt. Such corroborating circumstances may consist of the *acts, conduct, falsehood, if any, or other declarations, if any, of a defendant, and any other proved circumstance tending to show the guilt of the accused."* (Italics added.) On accomplices, the court instructed: "A conviction cannot be had upon testimony of an accomplice unless it is corroborated by *such other evidence as shall tend to connect the defendant with the commission of an offense* . . ." (italics added). Again: "The corroboration of the testimony of an accomplice required by law *may not be supplied by the testimony of one or more other accomplices,* but must come from *other evidence or circumstances,* or from the testimony of one or more *witnesses who were not accomplices."* (Italics added.) By telling the jury that accomplices cannot be corroborated by one another the idea was clearly communicated to the jury that the source of their corroboration must be "additional evidence of a *different character,* to the same point."

The same idea is accentuated by the instruction first quoted under the preceding heading respecting the process of removing and excluding all accomplice testimony and then examining all the other evidence independently of it.

We are satisfied that in these four instructions the jury was just as well informed of the meaning of corroborative evidence as it would have been by a mere reading of the

statutory definition in the abstract. ██ Instead of a mere abstract verbal definition those four instructions gave the jury *concrete illustrations* of independent evidence. While the language of section 1839 should have been given, no prejudice could have resulted from its omission in view of the incisive way in which these other instructions illustrated "additional evidence of a different character, to the same point" or, in other words, evidence derived from independent sources.

Appellant's supplemental brief cites *People* v. *Sternberg*, 111 Cal. 11 [43 P. 201], where the defendant requested, but the court refused, the following instructions: "1. The jury is instructed that it is their duty to view with distrust evidence of the oral admissions of defendant; 2. The jury is instructed that the evidence of an accomplice is to be viewed by a jury with caution and distrust; 3. By corroborative evidence is meant additional evidence of a different character to the same point." The court held that the first was properly refused but that the second and third should have been given, and reversed the judgment. In discussing the failure to give the last two instructions it is noteworthy that the court pointed out that *"They were not covered by any that were given. . . ."* (Italics added.) In our opinion, expressed earlier, the four instructions given in this case gave the jury an adequate idea of *"additional evidence of a different character, to the same point."* There is nothing in the Sternberg opinion indicating that if the failure to define corroborative evidence had been the only error the case would have been reversed, and appellant has cited no case of a reversal on that sole ground. Moreover there the defendant requested the instruction while here he did not.

*People* v. *Dobkin*, 74 Cal.App.2d 269 [168 P.2d 729], cited by appellant, was decided by this court. In that case the circumstances shown by the testimony of the complaining witness brought the case squarely within the rule of *People* v. *Robbins*, 171 Cal. 466 [154 P. 317], and we held that it was the duty of the court to instruct the jury as a matter of law that he was an accomplice *and reversed for that reason.* The only instruction given in that case which could "be said to define or deal with accomplices and their corroboration" was the following:

"I instruct you that a conviction of this defendant on charges of violation of Section 286 of the Penal Code cannot be had upon the testimony of an accomplice unless it be

corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.''

In the Dobkin case as in *People* v. *Sternberg,* the court not only failed to define corroborative evidence but to instruct *that the testimony of an accomplice should be viewed with distrust,* as we pointed out at page 278. We pointed out also that the court failed to instruct that oral admissions should be viewed with caution. The reversal, however, was on the ground first stated, namely, *the failure to directly tell the jury that the complaining witness was an accomplice.* The failure to define corroborative evidence was but one of several omissions in the instructions in the Dobkin case.

Appellant in his supplemental brief also cites *People* v. *Swoape,* 75 Cal.App. 404 [242 P. 1067], where (as in the Sternberg and Dobkin cases) the court failed to define corroborative evidence. But in the Swoape case (as in the Dobkin case) the court failed also to instruct the jury as a matter of law that Johnson was an accomplice. It also failed to give an instruction on accessories and it erred also in giving an instruction on feigned accomplices. There was a reversal in the Swoape case for these several errors. Moreover, there is nothing in the Swoape opinion to indicate that instructions substantially equivalent (to the omitted definition of corroborative evidence) were given, as they were in the case at bar.

Appellant's sixth point is that the testimony of the accomplices was not sufficiently corroborated as a matter of law, hence the evidence as it stands did not warrant or support the verdicts.

As in other instances in briefing this appeal, appellant's counsel after making the assertion of error or insufficiency do not assist the court by any argument or analysis. While a number of authorities are cited and quoted under this head, still we are not told wherein the corroboration breaks down.

Bass testified that he was with appellant on the Davidson burglary where they got a tea set, a camera, and an old revolver, and he identified the first two articles, which were

identified also by Mrs. Davidson, the owner. Bass testified that they then went over to Mayer's place. Mayer testified that he bought the property from appellant and there met Bass for the first time. Bass was thus corroborated by Mayer and Mrs. Davidson.

"The defendant's own statements and admissions, made in connection with other testimony, may afford corroborating proof sufficient to sustain a verdict" (*People* v. *Davis*, 210 Cal. 540, 558 [293 P. 32]), and when appellant admitted that he had introduced Bass to Mayer the jury, sole judges of credibility, might have disbelieved his timing of the introduction as of January, 1950, and his explanation of the Saint Bernard pup incident as having been the occasion, and treated appellant's own testimony as corroboration of Bass. Defendant admitted that he had owned a green 1935 Oldsmobile sedan during at least part of the period in question. He testified that he bought it around March 19 (which would be about three days after the Davidson burglary). He also admitted knowing Jack Key and testified that Bass had introduced Key to him.

Bass and Leus both testified as to the Erickson burglary and identified the television set in court. Both testified that they drove with appellant directly to Mayer's place, where he paid from $75 to $100 for that and other property. Mayer testified to that transaction. The boys' testimony was thus corroborated by both Mrs. Erickson and Mayer. With respect to Leus' meeting with Mayer, what has already been said with respect to the introduction of the boys to Mayer by appellant—and how the jury might have viewed the time and occasion of such introduction—applies here as well.

There is less direct evidence in the Smith case than in the other two burglaries, since Leus did not testify that he saw appellant enter the Smith home. That the Gruen wrist watch was Mrs. Smith's was positively established and Mayer testified that he bought it from appellant. While there is no corroboration of Leus up to this point, there is ample corroboration on other important circumstantial details. He testified that he, appellant and Jack Key traveled to Oakland in a blue '47 Buick convertible and that they were first in San Francisco; that the car was stopped in front of the house with Key remaining in the car; that he (Leus) reconnoitered the rear of the house while appellant did so in front; that another car drove up; that appellant then said "Let's get out of here" and they did so. Smith's testimony

that when he drove up with the rock he found a royal blue Buick or Oldsmobile convertible in front of his home and was told by its occupant that they had run out of gas, corroborates Leus' description of the car and his testimony that Key remained in the car in front of the house; that another car drove up, and that appellant then ordered a get-away.

Independent evidence given by the Smiths established that their home had been burglarized on May 13 since it showed that about 3 o'clock they found the house in disorder and the Gruen watch and other things missing. The watch was produced in court. Mayer testified that he had bought it from appellant. Independent testimony given by Harold Smith established that a blue Buick or Oldsmobile convertible was stopped in front of his home a few minutes before he and his wife discovered the burglary. Appellant admitted being in San Francisco on that day, in Key's blue Buick convertible. All this evidence is independent of all Leus had to say about coming up to Oakland with appellant and Key in a blue Buick convertible and about the actions of all three at the Smith premises when another car drove up. This circumstantial evidence corroborated Leus' story in many important respects. Piecing together these circumstances the jury might well have concluded (since *somebody* had entered the Smith home) that appellant had entered without Leus having seen him enter.

Mayer's testimony with respect to the purchase of *all* the stolen property from appellant corroborated the testimony of Bass and Leus on the same subject and met the requirement of section 1111, Penal Code, that such evidence must "tend to connect the defendant with the commission of the offense." It connected him because (a) by the owners' identification it was established that it was stolen property, and (b) the unexplained possession of stolen property "is a circumstance tending to prove guilt" (*People* v. *Porter,* 64 Cal.App. 4, 9 [220 P. 20] ; *People* v. *Braswell,* 103 Cal.App. 399, 403 [284 P. 709] ; *People* v. *Frahm,* 107 Cal.App. 253, 265 [290 P. 678] all burglary cases.) Moreover, the testimony of Mayer and of the owners of the stolen property met the negative provision of section 1111, Penal Code, that "the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." None of it related to such circumstances. It was in every respect "additional evidence of a different character, to the same point" (Code Civ. Proc., § 1839).

Appellant at first testified that he came to San Francisco on May 13 in a Packard car, but later admitted that it was Key's blue Buick convertible. Such conflicting testimony of the defendant himself may be used, as we have seen, as corroboration. In *People* v. *Watson*, 21 Cal.App. 692, 697 [132 P. 836], the court quotes from *People* v. *McLean*, 84 Cal. 480 [24 P. 32], as follows: "[A]lthough more is required by way of corroboration than to raise a mere suspicion, yet the corroborating evidence is sufficient if it, of itself tends to connect the defendant with the commission of the offense, although it is slight, and entitled, when standing by itself, to but little consideration. (*People* v. *Melvane*, 39 Cal. 614, 616; *People* v. *Clough*, 73 Cal. 348, 351 [15 P. 5].)" And adds: "It is also held that the necessary corroboration may be furnished by the defendant's own testimony. (*People* v. *Sullivan*, 144 Cal. 471 [77 P. 1000].)"

■ The corroboration may be gathered from the defendant's own conduct and attitude while testifying (*People* v. *Todd*, 9 Cal.App.2d 237, 241 [49 P.2d 611]). ■ The law governing the character of corroborative circumstances in a case where the guilt of an accused is sought to be established by accomplice testimony is the same as in a perjury case, "and that being so, the corroborative evidence need not be strong, nor even be sufficient in itself without the aid of other evidence to establish the fact" (*People* v. *Todd*, *supra*, pp. 241-242 and cases cited).

■ Appellant's seventh point is that there was prejudicial error in instructing the jury that in determining whether the testimony of an accomplice has been corroborated they must assume to be removed from the case the testimony of the accomplice and then examine all other evidence to determine whether there remains any evidence tending to connect the defendant with the commission of any offense.

The basis for this claim seems to be that the words "*any* offense" left the jury's inquiry too indefinite.

■ "Instructions should be given a reasonable, not a close and technical, interpretation, and they should be construed in connection with the evidence and the remainder of the charge. Whether a jury has been correctly instructed is not to be determined from a consideration of parts of an instruction or from particular instructions, but from the entire charge of the court" (8 Cal.Jur. p. 631).

■ The defendant was charged in one information with three burglaries. The first count covered the Smith home,

the second the Davidson home, the third the Erickson home. A minute or two (judging by the transcript) before reading the instruction now under discussion, the court read to the jury the charging part of these three counts, hence they had freshly in mind precisely the three offenses with which the defendant was charged.

Immediately following the instruction now under discussion the jury was given the following: "The mere fact, if it be a fact, that testimony has been corroborated does not mean that you are required to accept it as true. Your duty is to weigh such evidence, as you do all other evidence, and to *require as to each alleged offense charged against the defendant* that all the evidence pertaining thereto, considered together, carries the convincing force required by law before you find the defendant guilty of such charge against him." (Italics added.)

Moreover, just before the jury retired the court read *in their entirety* the six forms of verdict, two on each count.

In listening to the instructions *as a whole* the jurors could only have taken the words "any offense" to mean *any of the three offenses alleged in the information,* the charging parts of which had just previously been read by the judge. It would have been natural and reasonable to do so. (8 Cal. Jur. p. 631, *supra.*) They could not have been misled or confused by the words used. The instruction, read as a whole, was understandable.

 Appellant's eighth point is that there was prejudicial error in giving the following instruction:

"The mere possession of stolen property, however soon after the taking, unexplained by the person having possession, is not sufficient to justify a conviction. It is, however, a circumstance to be considered in connection with other evidence in determining the question of innocence or guilt. If you should find from the evidence that a burglary was committed on the premises involved in this case, and that thereafter the defendant was found in possession or claimed to be the owner of property stolen from the burglarized premises, such a fact would be a circumstance tending in some degree to show guilt, although not sufficient, standing alone and unsupported by other evidence, to warrant your finding him guilty. In addition to proof of possession of such property, there must be proof of corroborating circumstances tending of themselves to establish guilt. Such corroborating circumstances may consist of the acts, con-

duct, falsehoods, if any, or other declarations, if any, of a defendant, and any other proved circumstance tending to show the guilt of the accused.''

This instruction is composed of five sentences. Appellant cannot complain of the first. He cannot criticize the second since it states a well-settled rule. (See *People* v. *Porter,* 64 Cal.App. 4, 9 [220 P. 20]; *People* v. *Braswell,* 103 Cal.App. 399, 403 [284 P. 709]; *People* v. *Frahm,* 107 Cal.App. 253, 265 [290 P. 678], all burglary cases.) In *People* v. *Porter, supra,* an instruction which went even further was approved by this court. It read: ''. . . the mere possession of stolen property . . . the fruits of a burglary . . . is not presumptive evidence of guilt, but is a circumstance *tending to prove guilt . . .''* (Italics added.) *We held there* (64 Cal.App. 10) *that such instruction did not conflict with People* v. *Nichols,* 39 Cal.App. 29, 33 [177 P. 861], *upon which appellant now relies.* In *People* v. *Frahm, supra,* the instruction also went further than in the case at bar.

With respect to the third sentence, the testimony of the owners proved the three burglaries on the premises involved without recourse to accomplice testimony or to Mayer's testimony. That appellant thereafter had possession of the property was proved by Mayer's testimony that he bought it from appellant. The testimony just discussed came from sources independent of the accomplices. Moreover, it does not stand alone. The owners' identification of the several articles, showing that they were *stolen,* is to be taken in connection with the testimony of Mayer (who needs no corroboration) that he bought them from appellant. All that testimony is supported by the testimony of Bass and Leus and by all the circumstances discussed earlier including appellant's admittedly long acquaintance with Mayer. The third sentence of the instruction is therefore invulnerable. There is no need to discuss the remainder of the instruction in view of what has been said earlier.

In arguing that there was no evidence that appellant's possession of this property was not a ''secondhand possession,'' appellant entirely ignores the testimony of the accomplices that it was taken *directly* from the burglarized homes to Mayer and sold to him.

In *People* v. *Nichols,* 39 Cal.App. 29 [177 P. 861], claimed by appellant to be squarely in point, the instruction read:

''The court instructs you that where goods have been feloniously taken by means of a burglary, and either im-

mediately or soon after are found in the possession of a person who gives a false account, or refuses to give any account, of the manner in which he came into the possession, proof of such possession and guilty conduct is presumptive evidence not only that he stole the goods, but that he made use of the means by which access to them was obtained.'' Nothing of the kind was contained in the instruction here under attack. Moreover in the Nichols case the only testimony connecting the defendant with the burglary was that of a pawnbroker who had bought some of the stolen property from a man who looked like Nichols according to the pawnbroker. The Nichols case is not in point. (See *People* v. *Porter, supra,* 64 Cal.App. 4 at p. 10.)

Appellant's ninth point is that there was prejudicial error in instructing that ''The jury are the sole and exclusive judges of the effect and value of the evidence addressed to them, and of the credibility of the witnesses who have testified in the case. *The character of the witnesses, as shown by the evidence should be taken into consideration for the purpose of determining their credibility, whether or not they have spoken the truth . . .*'' (Italics added.)

The basis for the criticism is that no character evidence was offered by either side.

In *People* v. *Mohammed,* 189 Cal. 429 [208 P. 963], which was a first degree murder, death penalty case, an instruction that the ''character of the witnesses as shown by the evidence should be taken into consideration'' in determining their credibility was attacked on appeal. The court held the instruction proper and affirmed the judgment. Its reasons are stated at pages 431-432. In *People* v. *Amaya,* 134 Cal. 531, 539-540 [66 P. 794], a similar instruction was approved. And on the authority of the Mohammed case the court in *People* v. *Factor,* 125 Cal.App. 618, 623 [13 P.2d 984], approved a similar instruction.

Appellant's tenth point is that there was prejudicial error in failing to incorporate in particular instructions such language as ''if you find from the evidence'' or ''if you are satisfied from the evidence'' and further that the jury was not generally instructed as to the nonapplicability of particular instructions unless they found the existence of the facts making them applicable.

Again, as noted earlier, counsel do not assist the court by pointing to any instruction where any injustice or unfairness resulted from the failure to use such language.

In the absence of such specifications we are not called on to search the record, and such assignments may properly be disregarded (*People* v. *Siderius*, 29 Cal.App.2d 361, 372 [84 P.2d 545]; *People* v. *Corlett*, 67 Cal.App.2d 33, 50 [153 P.2d 595, 964]; *People* v. *Chait*, 69 Cal.App.2d 503, 519 [159 P.2d 445]; 2 Cal.Jur. 731-732).

Appellant's eleventh and last point is that certain witnesses for the prosecution "were not free to testify uncontrolled, but testified under coercion from the police officers." This objection is directed particularly to the witnesses Bass and Mayer. The record shows that the defense put on testimony addressed to this question of claimed pressure and full leeway was allowed in its development. The testimony was laid before the jury for whatever it was worth and the question respecting its weight was for the jury. The verdict indicates that the jury did not give the testimony much weight.

The evidence which we have summarized at considerable length under appellant's sixth point presents an unusually strong case of corroboration of accomplice testimony. In view of that showing and "an examination of the entire cause, including the evidence" (Const. art. VI, § 4½) we have no doubt that there was no miscarriage of justice. The instructions read as a whole were comprehensive and fair. The omission of the definition of corroborative evidence could not have led to a miscarriage of justice under the facts of this case and in view of the equivalent instructions which were given.

We find no merit in any of the appellant's numerous contentions.

The judgment and order appealed from are affirmed.

Nourse, P. J., and Dooling, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 11, 1952.